IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

LAWRENCE ARGABRIGHT, VICTORIA
FECHT, and LIBRADO MONTANO, on
behalf of themselves and all
others similarly situated,

                    Plaintiffs,

        v.

RHEEM MANUFACTURING COMPANY,

                    Defendant.

HONORABLE JEROME B. SIMANDLE

Civil No. 15-5243 (JBS/AMD)


**OPINION**


APPEARANCES:

Melanie H. Muhlstock, Esq.
PARKER WAICHMAN LLP
6 Harbor Park Dr.
Port Washington, NY 11050
        Counsel for Plaintiffs

Aaron Van Nostrand, Esq.
David Jay, Esq.
GREENBERG TRAURIG LLP
500 Campus Drive, Suite 400
P.O. Box 677
Florham Park, NJ 07932
        Counsel for Defendant

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

In this putative multistate class action, Plaintiff alleges
that Defendant Rheem Manufacturing Company ("Rheem" or "Rheem
Manufacturing") manufactured defective residential heating,
ventilating, and air conditioning ("HVAC") systems under the
Rheem and Ruud brand names. Plaintiffs in the proposed class

consist of all individuals who purchased or obtained Defendant's HVAC systems, and the following claims are asserted in the Complaint: breach of express and implied warranties and violation the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, <u>et seq.</u>; claims for fraudulent concealment, negligent misrepresentation, and strict product liability; statutory claims under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 <u>et seq.</u>, the Arizona Consumer Fraud Act, A.R.S. § 44-1521 <u>et seq.</u>, and New York General Business Law § 349; and claims for unjust enrichment and declaratory relief.

Defendant Rheem Manufacturing has moved to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6). [Docket Item 8.]

For the reasons set forth below, the Court finds that the allegations support a plausible claim for breach of implied warranty and violation of the Magnuson-Moss Warranty Act, and Defendant's motion will be denied with respect to those Counts. The Court will grant Defendant's motion with respect to the remaining claims.

## II.   BACKGROUND[1]

This putative class action arises from the alleged failure of certain copper evaporator coils contained in HVAC units that Defendant Rheem designed, manufactured, advertised, and sold to homeowners, builders, and contractors in the United States. The HVAC units are sold under the brand names Rheem and Ruud, and come with either a five- or ten-year limited parts warranty (the "Warranty"), which provides:

> RHEEM SALES COMPANY, INC. (Manufacturer of Rheem, Ruud and WeatherKing products) warrants the Covered Equipment to be free from defects in materials and workmanship, and will repair or replace, at its option, ANY PART of Covered Equipment installed in residential . . . applications which fails in normal use and service within the Applicable Warranty Periods . . . .

(Limited Warranty – Parts, Ex. A to Def. Br. [Docket Item 8-2].) Under "EXCLUSIONS," the Warranty states:

In addition to the specific exclusions set forth in the

---

[1] The facts alleged are drawn from Plaintiffs' Complaint [Docket Item 1] and from undisputedly authentic documents upon which Plaintiffs explicitly rely in their Complaint. See In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). Because Plaintiffs' breach of warranty claims are predicated upon the warranty Defendant provided with their products, the Limited Warranty Defendant submitted will properly be considered in connection with the pending motion to dismiss. (Limited Warranty, Ex. A to Def. Br. [Docket Item 8-2].) See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). For purposes of this motion, the Court must accept Plaintiffs' allegations as true.

other sections of this Limited Warranty document, THIS
Limited Warranty WILL NOT APPLY TO:
. . .
(d) parts installed with Covered Equipment or used in
connection with normal maintenance, such as cleaning or
replacing air filters, refrigerant, thermostats, tubing,
or concrete pads . . . .

(Id.) The Warranty further states, under a section titled "LABOR

COSTS," that it "does NOT cover any labor costs or expenses for

service, NOR for removing or reinstalling parts." (Id. (emphasis

in original); see also Compl. ¶¶ 50, 91.)[2]

Plaintiffs allege that the evaporator coils contained in

the Rheem and Ruud HVAC units, which are made from copper based

alloys, improperly and prematurely corrode and leak refrigerant

under normal use. (Compl. ¶ 6.) The deterioration that occurs is

referred to as formicary corrosion, or sometimes pinhole

corrosion. (Id. ¶ 39.) The loss of refrigerant reduces or

eliminates the ability of the HVAC units to provide cold air and

reduces their ability to function. (Id. ¶¶ 7, 42.) Plaintiff

alleges that the faulty evaporator coils are a defect in

---

[2] The Warranty also limits Defendant's liability to the terms set
forth in the Warranty:
    [Defendant's] SOLE LIABILITY WITH RESPECT TO DEFECTIVE
    PARTS OR FAILURE SHALL BE AS SET FORTH IN THIS LIMITED
    WARRANTY, AND ANY CLAIMS FOR INCIDENTAL OR CONSEQUENTIAL
    DAMAGES ARE EXPRESSLY EXCLUDED. Some states do not allow
    limitations on how long an implied warranty lasts, or
    for the exclusion of consequential damages, so the above
    limitation or exclusion may not apply to you.
(Ex. A to Def. Br.)

4

Defendant's product, and violates the express warranty and implied warranty of merchantability.

Plaintiffs additionally allege that Defendant knew or should have known of this defect based on numerous complaints they received from consumers and service technicians about failing or leaking copper coils. In their Complaint, Plaintiff includes excerpts from two dozen online consumer reviews noting problems with the evaporator coils and leakage of refrigerant. (See Compl. ¶ 26.) Moreover, Plaintiffs note that in 2013, Defendant introduced new coils made from aluminum two and a half times thicker than its counterpart in copper, and in a 2013 product video about the switch, Defendant had explained that "obviously the biggest difference that aluminum affords us is the elimination of formicary corrosion." (Id. ¶¶ 58-60.) According to Plaintiffs, the switch to thicker aluminum is also an indication that Defendant was aware of the corrosion problems with existing Rheem HVACs. (Id. ¶ 61.)

Plaintiffs assert that Defendant, despite knowing that their HVACs contained this defect, continued to represent their product's quality and fitness, and continued to warrant that the units were "free from defects in materials and workmanship." (Id. ¶¶ 54-55.) Additionally, pointing to the two dozen consumer reviews of Defendant's HVAC systems, Plaintiffs assert that

Defendant refused to honor its warranty obligations because it consistently refused to pay for replacement refrigerant or labor costs associated with the repair, and failed to replace HVAC units that had failed completely. (Id. ¶¶ 62, 98, & 102.)

Plaintiffs seek to bring this suit on behalf of all persons in the United States who purchased or acquired Rheem HVACs. In addition, they name three Plaintiffs, Lawrence Argabright, Victoria Fecht, and Librado Montano, to represent, alternatively or in addition to the nationwide class, subsets of the class of purchasers who reside in New Jersey, New York, and Arizona, respectively. (Id. ¶ 25-27.)

Lawrence Argabright, a resident of Shamong, New Jersey, purchased his Rheem HVAC system on September 9, 2011, from Crown Boiler Company and had it installed by David Wardell Heating and Cooling. (Id. ¶¶ 64, 66.) Plaintiff first noticed that his HVAC system was not cooling his home in July 2014, and subsequently called technicians three times over the course of July and August to inspect his unit. On the last visit, the technician noted that the leaks in refrigerant were due to a faulty evaporator coil, which the technician replaced. (Id. ¶¶ 67-69.) Plaintiff alleges that although Defendant provided Plaintiff with a new coil under its warranty, Plaintiff paid a total of $844.45 for replacement refrigerant and labor from the three

6

service visits, which Defendant did not cover. (<u>Id.</u> ¶ 70.)

Victoria Fecht, a resident of Carle Place, New York, purchased and installed her Rheem HVAC unit through Daverio Mechanical, a Rheem Top Contractor, who represented that Rheem was superior to comparable products from other manufacturers.[3] (<u>Id.</u> ¶¶ 72-74.) Plaintiff's HVAC system was installed in 2010. In June of 2014, Plaintiff noticed that the unit was not adequately cooling her home, and an inspection by a technician revealed that the system had a refrigerant leak. (<u>Id.</u> ¶ 77.) During a second service visit in August 2014, the inspecting technician noted that the unit's evaporator coils had multiple leaks, and a new coil was installed. (<u>Id.</u> ¶ 78.) Plaintiff paid for replacement refrigerant, service costs, and the new evaporator coil which together totaled $2,148.38. She alleges that to date, Defendant has not provided any compensation or reimbursement. (<u>Id.</u> ¶ 79.)

Plaintiff Librado Montano, a resident of Sahuarita, Arizona, purchased and installed a Rheem HVAC system in his home in or around October 2011, after a Rheem Top Contractor, Oasis Air Conditioning & Heating, represented to him that Defendant's

---

[3] According to Rheem's website, Rheem Top Contractors are a "network of elite heating, ventilating and air conditioning contractors" who "recommend Rheem products to their customers, but may service all heating and cooling brands." (Compl. ¶ 73.)

units were superior to its competitors. (Id. ¶¶ 80-84.)
Plaintiff noticed that the HVAC unit was not cooling his home in
or around March 2015 and called the same contractor who had
installed his unit to diagnose and fix the problem. The
technician found a leak in the evaporator coil in March of 2015,
and replaced the coil one month later in April. (Id. ¶¶ 85-87.)
Plaintiff asserts that the coil was covered under Defendant's
warranty, but that Defendant has not compensated him for the
$1,312 he paid in total for replacement refrigerant and service
costs. (Id. ¶ 88-89). There are no allegations that any of the
three Plaintiffs' HVAC units suffered problems after the
replacement coils were installed.

Plaintiffs' Complaint asserts claims for breach of express
warranty (Count I); breach of implied warranty of merchantability
(Count II); violation of the Magnuson-Moss Warranty Act ("MMWA")
(Count V); fraudulent concealment (Count III); negligent
misrepresentation (Count IV); strict product liability (Count
VI); violations of the New Jersey Consumer Fraud Act ("NJCFA"),
New York General Business Law ("N.Y. GBL") § 349, and the Arizona
Consumer Fraud Act ("ACFA") (Counts VII, VIII, & IX); unjust
enrichment (Count X); and declaratory relief (Count XI). Because
Plaintiffs do not oppose the dismissal of their claim for strict
liability (see Pl. Br. [Docket Item 26] at 14 n.3), Count VI will

8

be dismissed with prejudice.

Defendant seeks to dismiss the remaining ten counts (Def. Br. [Docket Item 8] and Def. Reply [Docket Item 29]), and the Court will address each claim in turn.

### III.   STANDARD OF REVIEW[4]

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the nonmoving party. A motion to dismiss may be granted only if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on

---

[4] The Court exercises jurisdiction over Plaintiffs' claims under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). Section 1332(d)(2) provides federal district courts with "original jurisdiction" over a case when three requirements are met: (1) an amount in controversy that exceeds $5,000,000; (2) minimally diverse parties; and (3) a class consisting of at least 100 or more members (the numerosity requirement). Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1348 (2013). With respect to the second requirement, CAFA provides that diversity is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Plaintiff alleges that the amount in controversy exceeds $5,000,000; the putative class members number in the thousands, thus meeting the numerosity requirement; and diversity is satisfied because Defendant is incorporated in Delaware with a principal place of business in Georgia, and class members come from New Jersey, New York, and Arizona, among other states. (Compl. ¶¶ 15, 20-23, & 30.) Defendant has not contested jurisdiction under CAFA.

its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Although the court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Iqbal, 556 U.S. at 678.

In addition, the complaint must contain enough well-pleaded facts to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id. at 679 (internal quotation marks and citation omitted).

Rule 9(b) of the Fed. R. Civ. P. requires particularized pleading for the conduct underlying Plaintiffs' fraud claims. Under Rule 9(b), the "circumstances" of the alleged fraud must be pleaded with enough specificity to "place defendants on notice of the precise misconduct with which they are charged." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d

10

786, 791 (3d Cir. 1984). Although the rule states that

"[m]alice, intent, knowledge, and other conditions of a person's

mind may be alleged generally," and does not require the

plaintiff to plead every material detail of the fraud, the

plaintiff must use "alternative means of injecting precision and

some measure of substantiation into their allegations of fraud."

In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198,

216 (3d Cir.2002) (internal quotations and citations omitted).

**IV. DISCUSSION[5]**

---

[5] This is a multistate class action lawsuit, and a choice of law
analysis must be conducted before the class is certified to
determine which state's law should apply to the class. See In re
LifeUSA Holding Inc., 242 F.3d 136, 147 n.11 (3d Cir. 2001)
(overturning district court's finding that predominance has been
satisfied for class to be certified because the court "failed to
consider how individualized choice of law analysis of the forty-
eight different jurisdictions would impact on Rule 23's
predominance requirement.") Plaintiffs and Defendant both cite
to New Jersey cases for the state law claims in this case and
neither side has engaged in a choice of law analysis. (See Def.
Br. at 9 n.2.) Because the parties have not briefed the issue,
and because the choice of law analysis for contract or quasi-
contract claims is generally "a very fact-intensive inquiry" and
the factual record is not full enough to make a choice of law
determination, the Court will postpone the choice of law
analysis to a later stage. See Snyder v. Farnam Co., 792 F.
Supp. 2d 712, 721 (D.N.J. 2011) (declining to conduct choice of
law analysis in resolving a motion to dismiss certain breach of
warranty claims because the factual record was insufficiently
developed); Harper v. LG Elecs. USA, Inc., 595 F. Supp. 2d 486,
491 (D.N.J. 2009) (deferring choice of law analysis on breach of
warranty claims until record was more fully developed after
motion to dismiss stage). Since Plaintiffs have made their
allegations under New Jersey law and both parties have briefed
the sufficiency of the claims under New Jersey law, the Court
will, for purposes of deciding the present motion to dismiss,

## A. Breach of Express Warranty (Count I)

Plaintiffs complain that Defendant breached its Warranty by failing to replace the refrigerant, failing to pay for the cost of repair, and replacing the defective evaporator coil with coils that are "prone to the same defect in manufacture and/or design as the original." (Pl. Br. at 4.) Plaintiffs also argue that Defendant's Warranty fails of its essential purpose because the remedy they chose was insufficient under the contract: Defendant never elected to repair the defective coils, and, according to Plaintiffs, chose replacement coils that were made of the same copper alloy material susceptible to formicary corrosion. (Id. at 5-7.) Finally, Plaintiffs argue that the Warranty is unconscionable because Defendant knew that their HVAC units contained this defect when they sold them, and "manipulated the terms of the warranty" to avoid the costs of repair. (Id. at 8-9.)

Even construed liberally, however, the allegations in Plaintiffs' Complaint are insufficient to plausibly make out Plaintiffs' claims for breach of warranty.

---

apply New Jersey law to determine whether Plaintiffs have succeeded in stating plausible claims for relief, except that, naturally, New York law will govern Count VIII's claim for violation of the New York General Business Law and Arizona law will govern the claim in Count IX for violation of the Arizona Consumer Fraud Act.

1. <u>Defendant Did Not Breach the Terms of Its Warranty</u>

Plaintiffs' first argument, that Defendant breached its

Warranty by refusing to pay for repair costs and refrigerant, is

without merit. Under New Jersey law, "to state a claim for

breach of express warranty, Plaintiffs must properly allege: (1)

that Defendant made an affirmation, promise or description about

the product; (2) that this affirmation, promise or description

became part of the basis of the bargain for the product; and (3)

that the product ultimately did not conform to the affirmation,

promise or description." <u>Francis E. Parker Memorial Home, Inc.</u>

<u>v. Georgia-Pacific LLC</u>, 945 F. Supp. 2d 543, 568 (D.N.J. 2013).

In this case, Defendant's parts warranty is limited, and allows

Defendant, "at its option," to replace a failing part, without

paying for the cost of labor and repair. (<u>See</u> Ex. A to Def. Br.

(stating that Rheem "will repair or replace, *at its option*, ANY

PART of Covered Equipment . . . which fails in normal use and

service," and will "NOT cover any labor costs or expenses for

service, NOR for removing or reinstalling parts.").)

As an initial matter, the Court rejects Plaintiffs'

argument that because Defendant's Warranty promised that the

units will be "free from defects and workmanship," Plaintiffs

"trusted they would be protected from the failure of the unit or

any part of it during the warranty period." Plaintiffs appear to

be suggesting, in other words, that Defendant breached the
Warranty merely because its HVAC units malfunctioned while still
under the warranty period. No reasonable reading of the Warranty
suggests that Defendant made such a representation. Defendant
promised a working HVAC unit for five or ten years, along with
the limited remedy of repair or replacement of a part in the
case of malfunction within that time period. (Ex. A of Def. Br.
(promising that product would be "free from defects and
workmanship, and will repair or replace, at its option, ANY PART
of Covered Equipment . . . which fails in normal use and service
within the Applicable Warranty Periods"). Because the limited
replacement clause states Defendant's obligation in the case of
a parts failure, the Warranty did not guarantee a defect-free
product that would need no replacement or repair. Plaintiffs'
interpretation of the Warranty would render the replacement
clause meaningless, and the Court will therefore decline to
adopt it. See Kuzian v. Electrolux Home Prods., Inc., 937 F.
Supp. 2d 599, 611 (D.N.J. 2013) ("[A]n express warranty with a
limited time period does not mean that a seller is promising a
defect-free product.").

    According to Plaintiffs' own allegations, Plaintiffs
received the precise benefit to which they were entitled under
the Warranty: a replacement coil. The Complaint explicitly

14

states that a "new evaporator coil was itself provided under warranty" to Argabright, and the coil provided to Montano was also "covered under warranty." (Compl. ¶¶ 70, 88.)[6]

Plaintiffs complain that Defendant should have exercised the "repair" provision under the Warranty and covered the labor costs associated with servicing their units, but that was never required. The Warranty gave full discretion to Defendant to "repair or replace," and, unfortunately for Plaintiffs, Defendant chose in this instance to exercise its option to replace. Nor does Plaintiffs' complaint that Defendant failed to cover the cost of replacement refrigerant amount to a cause of

---

[6] As for Fecht, who Plaintiffs allege received "no compensation or reimbursement" from Defendant, there is no indication that she ever contacted Defendant for reimbursement for the new evaporator coil. Plaintiffs allege only that Fecht contacted a third party technician who inspected the unit and ultimately installed a new coil; that her expenses to date "have been paid entirely out of pocket," and that Defendant "has provided no compensation or reimbursement for either materials or labor." (Compl. ¶¶ 78-79.) The facts in their current form are insufficient to draw an inference that Fecht sought replacement by Defendant of the coil and Defendant refused, in violation of the terms of the Warranty. For this reason, Fecht has also failed to state a plausible cause of action for breach of warranty. See, e.g., Spera v. Samsung Elecs. Am., Inc., No. 12-05412, 2014 WL 1334256, at *8 (D.N.J. Apr. 2, 2014) (dismissing an express warranty claim because "the Court cannot discern from the Complaints whether Samsung was contacted during the warranty period"); Palmucci v. Brunswick Corp., 710 A.2d 1045, 1046 (N.J. Super. Ct. App. Div. 1998) (plaintiff was not entitled to recovery under breach of warranty claim because he "did not abide by the requirements of the warranty in that he did not allow the manufacturer to use the [repair] remedy the warranty permitted").

action for breach, since Defendant's Warranty expressly states that parts "used in connection with normal maintenance, such as . . . refrigerant," are excluded from coverage. (Ex. A. to Def. Br.)

To the extent Plaintiffs argue that Defendant breached the Warranty by providing the same allegedly defective copper coil instead of the aluminum coil, that fact was nowhere in Plaintiffs' Complaint, and the Court will disregard it in deciding the present motion.[7] See Voneida v. Pennsylvania, 508 Fed. App'x 152 (3d Cir. 2012) ("[S]tatements in a brief are not a substitute for the allegations in the complaint"); Seeds of Peace Collective v. City of Pittsburgh, 453 F. App'x 211, 215 (3d Cir. 2011) ("[W]e do not consider factual allegations made in [the plaintiff's] brief but not pleaded in the complaint.").

If Plaintiffs continued to experience problems with their

---

[7] Nor is it even clear that Defendant had an obligation under the Warranty to replace the failing coil with one of superior quality at no cost. The Warranty provides only for replacement of the failed part, with an "equivalent" part to be provided only "[i]f an exact replacement is not available." Additionally, the Warranty states, "If government regulations, industry certification or similar standards require the replacement unit to have features not found in the defective unit, you will be charged for the difference for those required features." (Ex. A to Def. Br.) These terms suggest that Defendant was required to upgrade the coil only if the copper coil was not available, or if "government regulations, industry certification or similar standards" required it, with Plaintiff assuming the cost differential in the latter case.

HVAC units even after the installation of a replacement coil,
indicating that Defendant's remedy under the Warranty was in
fact inadequate, that might very well sway the Court's analysis.
See Chatlos Sys. Inc. v. Nat'l Cash Register Corp., 635 F.2d
1081, 1086 (3d Cir. 1980) (where defendant "repeatedly attempted
to correct the deficiencies" but "nevertheless still had not
provided the product warranted a year and a half after" product
broke down, the "delay made the correction remedy ineffective,
and it therefore failed of its essential purpose."). Should
Plaintiffs choose to amend their Complaint to include such
allegations, the Court will address it fully at that time.
Presently, however, the Complaint includes no facts which would
suggest that the new coil to which Plaintiffs were entitled
failed to cure the alleged defect. Accordingly, the Court finds
that Plaintiffs have not pleaded a claim for breach of the
express warranty.

  2. The Warranty Does Not Fail of Its Essential Purpose

     Plaintiffs' second argument, that the Warranty fails of its
essential purpose, is equally without merit. New Jersey law
permits parties to a contract to establish an exclusive or
limited remedy under the terms of the contract. N.J.S.A. 12A:2-
719(1)(b). However, "[w]here circumstances cause an exclusive or
limited remedy to fail of its essential purpose," a remedy may

17

be available under the New Jersey U.C.C. N.J.S.A. § 12A:2-719(2); see also id. cmt. 1 ("[W]here an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article."); BOC Grp., Inc. v. Chevron Chem. Co., LLC, 819 A.2d 431, 438 (N.J. Super. Ct. App. Div. 2003). Courts have generally concluded that "'so long as the buyer has the use of substantially defect-free goods, the limited remedy should be given effect.'" Viking Yacht Co., Inc. v. Composite One LLC, 385 Fed. App'x 195, 207 (3d Cir. 2010) (quoting Chatlos Sys., Inc. v. Nat'l Cash Register Corp., 635 F.2d 1081, 1085 (3d Cir. 1980)). But where the seller is "either unwilling or unable to conform the goods to the contract," Chatlos, 635 F.2d at 1085, or where "novel circumstances not contemplated by the parties" works to deprive a party of the "substantial value" of its bargain, the remedy will not suffice. BOC Grp., 819 A.2d at 438 (internal quotations and citation omitted).

Thus, for example, courts have held that a remedy fails of its essential purpose if, "after numerous attempts to repair," the product does not operate free of defects. Gen. Motors Acceptance Corp. v. Jankowitz, 523 A.2d 695, 703 (N.J. Super. Ct. App. Div. 1987); see also Chatlos, 635 F.2d at 1085-86

18

(concluding that remedy failed of its essential purpose under New Jersey law when seller was unable to correct deficiencies in product after a year and a half of trying). Similarly, a remedy may also be held to fail of its purpose "if the buyer is required to perform an act that cannot be done," such as where a warranty calls for parts to be delivered, but the parts were destroyed, or when "repair or replacement take an unreasonable time to complete." BOC Grp., 819 A.2d at 438-39. Since the "primary objective" of a limited remedy "is to give the seller an opportunity to make the goods conform while limiting exposure to risk by excluding liability for damages that might otherwise be due," Chatlos, 635 F.2d at 1085, the key inquiry in determining whether a limited remedy failed of its essential purpose is "whether the buyer is given, within a reasonable time, goods that conform to the contract." Delhomme Indus., Inc. v. Houston Beechcraft Inc., 669 F.2d 1049, 1063 (5th Cir. 1982).

Similar facts are not present in this case and do not make out a claim that the Warranty failed of its essential purpose. Defendant warranted only that in the case of a parts failure, it would, at its option, "repair or replace" the part. Had Defendant refused to repair or replace the nonworking coils, or had Defendant's replacement parts failed to function, saddling Plaintiffs with non-working units still under warranty,

19

Plaintiffs would have a fair claim that the remedy contemplated under the Warranty failed of its essential purpose. See Garden State Food Distibs., Inc. v. Sperry Rand Corp., 512 F. Supp. 975, 978 (D.N.J. 1981) (explaining that courts have held remedy inadequate where "the plaintiff's remedy was limited solely to repair or replacement of defective parts and the seller failed to replace or repair in a reasonably prompt and non-negligent manner" (internal quotations and citation omitted)). But the allegations in this case fall far short. Rheem reimbursed Plaintiffs for the replacement evaporator coils in accordance with the contractual terms,[8] and there are no allegations to suggest that Defendant delayed or failed to act. Although Plaintiffs now claim in their brief that the replacement coils are made of the same copper alloy material and are prone to the same defect, that fact was not pleaded in the Complaint, and the Court will not consider it. More importantly, even if that were true, there is no allegation that Plaintiffs' HVAC units continued to malfunction after the replacement coils were

---

[8] Of course, in Fecht's case, there are no allegations to even suggest that she contacted Defendant and asked for the remedy to which she was entitled under the contract. The facts pertaining to Fecht are also deficient, and do not make out a claim that Defendant's remedy failed of its essential purpose. See Palmucci v. Brunswick Corp., 710 A.2d 1045, 1048 (N.J. Super. Ct. App. Div. 1998) (holding that "defendant's warranty did not fail of its essential purpose because defendant was not allowed the opportunity to repair the engine.").

installed. Based solely on the facts in the Complaint, Defendant replaced the malfunctioning part, leaving Plaintiffs with working HVAC units. The Court cannot conclude, based on these allegations, that Defendant failed to provide Plaintiffs with "goods that conform to the contract," or were deprived of the "substantial value" of the bargain. Accordingly, the Court finds that Plaintiffs have not stated a plausible claim that Defendant's remedy "failed of its essential purpose."[9] See Roberts v. Detroit Diesel Corp., 2007 WL 1038986, at *6 (N.J. Super. Ct. App. Div. Apr. 9, 2007) ("We are satisfied that the warranty did not fail of its essential purpose because plaintiff cannot show that Detroit Diesel failed to repair the engine problems and that the engines did not operate properly after they were repaired.").

### 3. The Warranty Is Not Unconscionable

The Court now turns to Plaintiffs' third argument: that Defendant's Warranty is unconscionable. It is well-settled that courts "may refuse to enforce contracts that are unconscionable

---

[9] Nor does the Court agree that the remedy was insufficient because Defendant did not pay for replacement refrigerant or labor and declined to exercise its option to repair the unit. (See Pl. Br. at 4.) As noted above, the Warranty expressly limited Defendant's obligations to repairing or replacing a nonconforming part, at Defendant's discretion, which they performed. The Warranty does not "fail of its essential purpose" merely because the remedy is limited in scope.

or violate public policy." Saxon Constr. & Mgmt Corp. v. Masterclean of N.C., Inc., 641 A.2d 1056, 1058 (N.J. Super. Ct. App. Div. 1994). In consumer goods transactions such as those involved in this case, "'unconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like, which are stamped unlawful under N.J.S.A. 56:8-2.'" Palmucci v. Brunswick Corp., 710 A.2d 1045, 1049 (N.J. Super. Ct. App. Div. 1998) (quoting Kugler v. Romain, 279 A.2d 640, 652 (1971)). A "simple breach of warranty or breach of contract is not per se unfair or unconscionable." See Gennari v. Weichert Co. Realtors, 672 A.2d 1190, 1205 (N.J. Super. Ct. App. Div. 1996); see also D'Ercole Sales, Inc. v. Fruehauf Corp., 501 A.2d 990, 998 (N.J. Super. Ct. App. Div. 1985).

Unconscionability may be either substantive or procedural. New Jersey courts may find a contract term substantively unconscionable if it is "'excessively disproportionate'" and involves an "'exchange of obligations so one-sided as to shock the court's conscience.'" Delta Funding Corp. v. Harris, 912 A.2d 104, 120 (N.J. 2006) (quoting Sitogum Holdings, Inc. v. Ropes, 800 A.2d 915, 921 (N.J. Super. Ct. Chanc. Div. 2002)). Procedural unconscionability refers to unfairness in the formation of the contract, and may be shown by "'a variety of

inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.'" Muhammad v. Cty. Bank of Rehoboth Beach, Del., 912 A.2d 88, 96 (N.J. 2006) (quoting Sitogum, 800 A.2d at 921).

The Court first disposes of the argument, to the extent Plaintiffs raise it, that Defendant's Warranty is procedurally unconscionable. Plaintiffs' bare assertion is unaccompanied by any argument or support. (See Pl. Br. at 9) Moreover, the only allegation in the Complaint suggesting unfairness in the formation of the contract is the general statement that the bargaining power between Plaintiffs and Defendant "was grossly unequal." (See Compl. ¶ 53.) Of course, there is a disparity in bargaining power in nearly all consumer contracts executed between a purchaser and a manufacturer, and Plaintiffs' conclusory assertion is by itself insufficient to render a contract unconscionable. See Brennan v. CIGNA Corp., 282 Fed. App'x 132, 136 (3d Cir. 2008) ("More than a disparity in bargaining power is needed to show than an arbitration agreement between an employer and its employee was not entered into willingly"); Skeen v. BMW of N. Am., LLC, No. 13-1531, 2014 WL 283628, at *13 (D.N.J. Jan. 24, 2014) (noting that preprinted contract of adhesion is not per se unconscionable); Delta

23

Funding Corp., 912 A.2d 104, 111 (N.J. 2006) (noting that
arbitration agreement in consumer contract with Delta contained
some level of procedural unconscionability but "does not, by
itself, render the arbitration agreement unenforceable"); see
also Alban v. BMW of N. Am., No. 09-5398, 2011 WL 900114, at *9
(D.N.J. Mar. 15, 2011) (rejecting plaintiff's "bare-bones
allegations that he 'had no meaningful choice in determining'"
the terms of warranty "and that a 'gross disparity in bargaining
power existed' between him and BMW" because they were "'no more
than conclusions [that] are not entitled to the assumption of
truth.'" (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009))).
As there are no additional allegations of a defect during
contract formation, Plaintiffs' claim for procedural
unconscionability must be dismissed.

The facts are also insufficient to support a reasonable
inference of substantive unconscionability. Plaintiffs argue
that the contract is substantively unconscionable because
Defendant "knew the HVACs were defective when they sold them,"
and "manipulated the terms of the warranty" to avoid repair
costs. (Pl. Br. at 9.) To support the allegation that Defendant
had notice of the particular defect, Plaintiffs point to the
fact that they submitted claims under their warranty; that
numerous consumers has posted in a public online forum about the

24

failure of Defendant's evaporator coils; and that Defendant later switched to corrosion-resistant aluminum coils. (Id.)

None of these facts, however, raise an inference that Defendant had knowledge of the defect at the time they issued the warranties to Plaintiffs. The two dozen consumer reviews that were published in a public forum online were all posted between June 2012 and October 2012, and Defendant began to use coils made out of aluminum in September of 2013. Plaintiffs, however, bought their HVAC systems in 2010 and 2011, well before the date of the first posted consumer review in June of 2012. Additionally, Argabright and Montano's units did not begin failing until 2014 and 2015, respectively, at which point they notified Rheem. Likewise, Fecht's unit did not begin to have problems until 2014. The factual support is insufficient to raise a plausible claim as to Defendant's knowledge because at most, it suggests that Defendant was made aware of the defect in June 2012, *after* the warranties were issued in this case. See McQueen v. BMW of N. Am., LLC, No. 12-06674, 2014 WL 656619, at *4 (D.N.J. Feb. 20, 2014) (ten customer complaints were insufficient to show that defendant had knowledge of the specific defect alleged); Spera v. Samsung Elecs. Am., Inc., No. 12-5412, 2014 WL 1334256, at *6 (D.N.J. Apr. 2, 2014) (dismissing consumer fraud because plaintiffs failed to state

sufficient facts to show that defendant knew of alleged defects prior to sale); Weske v. Samsung Elecs. Am., Inc., 2012 WL 833003, at *5 (D.N.J. Mar. 12, 2012) (allegations showed that consumers complained of product after the plaintiffs had already purchased the product and thus did not establish defendants' knowledge and concealment of the defect at the time of plaintiffs' purchase); Suddreth v. Mercedes-Benz, No. 10-5130, 2011 WL 5240965, at *3 (D.N.J. Oct. 31, 2011) (dismissing claim of substantive unconscionability because plaintiffs failed to plead sufficient facts showing that defendant knew of defect in car at the time they issued warranty).

Plaintiffs' claim also fails because "a finding of unconscionability cannot be premised solely upon allegations that Defendant knew that a defect in the product might arise," and created a limited warranty designed to avoid fixing the defect. Suddreth, 2011 WL 5240965, at *3. New Jersey courts have long held that such warranties are not so grossly unfair that they would be considered substantively unconscionable. See, e.g., T.J. McDermott Transp. Co. v. Cummins, Inc., 2015 WL 1119475, at *9 (D.N.J. Mar. 11, 2015) (fact that defendants knew of alleged defects when they made the warranties did not establish substantive unconscionability); Nelson v. Nissan N. Am., Inc., 894 F. Supp. 2d 558, 565-66 (D.N.J. 2012) (allegation

that defendant car manufacturer "knew with certainty" that
transmission would fail just after expiration of the warranty
period did not make warranty substantively unconscionable);
Alban v. BMW of N. Am., No. 09-5398, 2011 WL 900114, at *9
(D.N.J. Mar. 15, 2011) (allegations that defendant knew defect
would arise after expiration of the warranty "do not indicate
that the time and mileage limitation clause in the warranty was
unconscionable); Henderson v. Volvo Cars of N. Am., LLC, No. 09-
4146, 2010 WL 2925913, at *9 (D.N.J. July 1, 2010)
(manufacturer's mere knowledge that a part will fail after
expiration of warranty period "does not alone make [a]
time/mileage limitation unconscionable.").

The plaintiffs in the above cases raised claims of
substantive unconscionability, alleging that defendant knew of
the defect at the time they issued the warranty; knew when the
defect would manifest; and "manipulated" the warranty's time
period so as to avoid liability. Such conduct, the courts held,
did not make a warranty substantively unconscionable. As one
court explained, this is because a manufacturer '"must predict
rates of failure of particular parts in order to price
warranties,'" and "'[a] rule that would make failure of a part
actionable based on such "knowledge" would render meaningless'"
the limitations built into a warranty's coverage. T.J.

27

McDermott, No. 14-4209, 2015 WL 1119475, at *9 (D.N.J. Mar. 11, 2015) (quoting Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir. 1986)); see also Majdipour v. Jaguar Land Rover N. Am., LLC., No. 12-7849, 2013 WL 5574626, at *20 (D.N.J. Oct. 9, 2013) (explaining same). Although in the above cases, the product defects occurred after the expiration of the warranty period in the above cases, the reasoning applies with equal force here. Plaintiffs' allegation that Defendant knew of a latent defect at the time it issued its Warranty, even if true, does not render the warranty unconscionable. As a manufacturer, Defendant is within its right to create a limited remedy that minimizes its costs and obligations based on its prediction of the rate of failure of particular parts.[10]

---

[10] The rule, admittedly, is severe, and grants little favor to consumers, but demonstrates the high standard that must be met for a contract to be ruled "substantively unconscionable." See Dalton v. Gen. Motors Corp., No. 05-727, 2005 WL 2654071, at *8 (D.N.J. Oct. 17, 2005) ("'[A] contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other. . . . Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience.'") (citation omitted).

In addition to the reasoning above, the Court finds nothing substantively unconscionable about specific terms of Defendant's Warranty. Defendant's warranty is for five years, which is not so short as to "shock the conscience." See, e.g., Nelson, 894 F. Supp. 2d at 565-66 (D.N.J. 2012) (finding nothing substantively unconscionable about a five-year/60,000 mile warranty); Majdipour, 2013 WL 5574626, at *20 (finding nothing substantively unconscionable about a six-year/75,000 mile warranty). Moreover, a warranty that limits the buyer's remedies

\*\*\*

Accordingly, for all the reasons above, the Court will dismiss Plaintiffs' claim for breach of express warranty. Because amendment would be futile, the claim will be dismissed with prejudice.

**B. Breach of Implied Warranty of Merchantability (Count II)**

An implied warranty of merchantability "protect[s] buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose," Crozier v. Johnson & Johnson Consumer Co., 901 F. Supp. 2d 494, 509 (D.N.J. 2012) (quoting Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992)), and "simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold." Henningsen v. Bloomfield Motors, 161 A.2d 69, 76 (N.J. 1960); see also Kuzian v. Electrolux Home Prods., Inc., 937 F. Supp. 2d 599, 612 (D.N.J. 2013) (citing N.J.S.A. § 12A:2-314). "'Merchantability does not mean that the goods are exactly as the buyer expected, but rather that the goods satisfy a minimum level of quality.'" Nelson, 894 F. Supp.

---

to repair or replacement of non-conforming goods, at the seller's option, has long been permitted by New Jersey courts. See, e.g., Palmucci v. Brunswick Corp., 710 A.2d 1045, 1048 (N.J. Super. Ct. App. Div. 1998); Alban, 2011 WL 900114, at *9 (warranty provision stating that defendant car manufacturer would "repair or replace" any defective parts within four years or 50,000 miles was not unconscionable).

2d 558, 566 (citation omitted); <u>see also</u> <u>Lieberson v. Johnson &</u>
<u>Johnson Consumer Cos.</u>, 865 F. Supp. 2d 529, 542 (D.N.J. 2011).
In order for the implied warranty of merchantability to be
breached, the product at issue must have been defective or not
fit for the general purpose for which it was manufactured and
sold. <u>See</u> <u>Altronics</u>, 957 F.2d at 1105; <u>Ferrari v. Am. Honda</u>
<u>Motor Co.</u>, 2009 WL 211702, at *3 (N.J. Super. Ct. App. Div.
2009).

Plaintiffs have stated a plausible claim for breach of the
implied warranty of merchantability. They allege that Rheem sold
them HVAC systems that did not cool their home properly, and
that they purchased these systems for the specific purpose of
cooling their homes. Plaintiffs further allege that they began
experiencing problems with Defendant's products in the course of
normal use, all within four years of purchase and within the
warranty period. Plaintiff Argabright, for example, purchased
his HVAC unit in September of 2011 and asserts that it began
having problems in July of 2014, less than three years later.
Plaintiff Fecht installed her Rheem HVAC unit sometime in 2010,
and noticed a problem in June 2014. Likewise, Plaintiff Montano
purchased a Rheem HVAC in October of 2011 and discovered a
problem in March 2015, approximately three and a half years
later. The Court finds these allegations sufficient to state a

claim for a breach of the implied warranty of merchantability. See, e.g., Kuzian, 937 F. Supp. 2d at 603 (plaintiffs adequately stated claims for breach of implied warranties of merchantability and fitness where they alleged that defendant sold them refrigerators that did not produce ice properly and they purchased the refrigerators "for the specific purpose of ice making").

Contrary to Defendant's contention, the fact that the HVAC units "functioned 3-4 years without experiencing any issues," (Def. Br. at 19), does not mandate dismissal of this claim. True, "there is no duty on the part of a manufacturer to furnish tools which will not wear out," Jakubowski v. Minn. Min. & Mfg., 199 A.2d 826, 831 (N.J. 1964), the fact that the evaporator coils in each of Plaintiffs' HVAC units malfunctioned well within the warranty period raises an inference that the expected useful life of the Defendant's product had not been exhausted when it stopped working. This particular factual allegation distinguishes the present case from Suddreth v. Mercedes-Benz, LLC, the only case which Defendant cites for support. (See Def. Br. at 19.) In Suddreth, the court rejected a breach of implied merchantability claim against a car manufacturer, noting that plaintiff did not experience problems with the car for several years. Importantly, the defect manifested itself outside of the

31

four-year express and implied warranty period, and Plaintiffs

had provided no "further support as to how the length of time

here fell so below industry standards as to render the product

unmerchantable." 2011 WL 5240965, at *5.

By contrast, Plaintiffs in this case allege that

Defendant's products consistently failed due to defective coils

even before the express and implied warranties ran out.

Defendant's Warranty explicitly limits any implied warranties to

the same time period applicable to the express Warranty. (See

Ex. A to Def. Br. ("ANY IMPLIED WARRANTIES, INCLUDING

MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, SHALL NOT

EXTEND BEYOND THE APPLICABLE WARRANTY PERIODS SPECIFIED IN THIS

LIMITED WARRANTY.").) The warranty period was between five and

ten years, but Plaintiffs each allege that the HVAC units began

failing and required repairs and replacement of parts within

four years of purchase. Reading these allegations in Plaintiffs'

favor, as the Court must at this stage in the litigation, the

Court finds that Plaintiffs have established a plausible claim

that Defendant's HVAC units suffered from a latent defect and

fell "below commercial standards." Crozier, 901 F. Supp. 2d at

509.

Although Argabright and Montano have stated plausible

claims for breach of the implied warranty of merchantability,

the Court agrees with Defendant that Fecht's claim is time-barred. Under the New Jersey Uniform Commercial Code, any action for breach of contract for sale "must be commenced within four years after the cause of action has accrued." N.J.S.A. § 12A:2-725(1). Moreover, "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," and "[a] breach of warranty occurs when tender of delivery is made." N.J.S.A. § 12A:2-725(2). Because Fecht purchased and installed her Rheem unit sometime in 2010, and her Complaint would have had to have been filed in 2014 in order to be timely.

Plaintiffs argue that the "future performance" exception to this rule should apply. When a warranty of "future performance" is involved, the four-year limitations period does not begin to run until the time the defect was or should have been discovered. N.J.S.A. § 12A:2-725(2) ("A breach of warranty occurs when tender of delivery is made, *except that where a warranty explicitly extends to future performance of the goods* and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." (emphasis added)); see Comm'rs of Fire Dist. No. 9 v. Am. La France, 424 A.2d 441, 444 (N.J. Super. Ct. App. Div. 1980).

33

Under New Jersey law, a warranty "to repair any product defect that occurs during a warranty period" constitutes a warranty of "future performance," and a cause of action therefore does not accrue until the breach is or should have been discovered. Poli v. DaimlerChrysler Corp., 793 A.2d 104, 105 (N.J. Super. Ct. App. Div. 2002); see also Docteroff v. Barra Corp. of Am., Inc., 282 659 A.2d 948 (N.J. App. Div. 1995)) (seller's agreement to repair or replace defects that become evident during a specified period of time "cannot be characterized as a mere representation of the product's condition at the time of delivery rather than its performance at a future time." (internal quotations and citation omitted)).

    Plaintiffs may very well be correct that the express warranty in this case, which to repair or replace any part of the product "which fails in normal use" within a five- or ten-year period, is a warranty of "future performance." But "implied warranties of merchantability and fitness for a particular purpose 'do not explicitly extend to the future performance of the goods.'" ACH Enters. 1 LLC v. Viking Yacht Co., 817 F. Supp. 2d 465, 471 (D.N.J. 2011) (quoting S. Jersey Gas Co. v. Mueller Co., Ltd., No. 09-4194, 2010 WL 1742542, at *9 n.2 (D.N.J. Apr. 27, 2010)). "Implied warranties, by their very nature, cannot extend to future performance because such an extension must be

34

explicit and an implied warranty cannot explicitly state anything." Travelers Indem. Co. v. Dammann & Co., Inc., 592 F. Supp. 2d 752, 765 (D.N.J. 2008); see also Atl. Health Sys. v. Cummins Inc., No. 08-3194, 2010 WL 5252018 at *5-6 (D.N.J. Dec. 17, 2010) (stating same); see generally Standard Alliance Indus. v. Black Clawson Co., 587 F.2d 813, 820 (6th Cir. 1978) ("Most courts have been very harsh in determining whether a warranty explicitly extends to future performance. . . . [M]ost express warranties cannot meet the test and no implied warranties can since, by their very nature, they never 'explicitly extend to future performance.'").

Thus, "[a] cause of action for breach of implied warranty accrues when delivery of the product is made, regardless of the purchaser's lack of knowledge." Moulton v. LG Elecs. USA, Inc., No. 11-4073, 2012 WL 3598760, at *3 (D.N.J. Aug. 21, 2012). Because Fecht's claim for breach of implied warranty of merchantability accrued sometime in 2010, and this Complaint was not filed until July of 2015, her claim is time-barred. Accordingly, the Court will grant Defendant's motion to dismiss Count II with respect to Fecht.

### C. Violation of the Magnuson-Moss Warranty Act (Count V)

The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., provides a private right of action in federal court for

consumers who are "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, [or] implied warranty." 15 U.S.C. § 2310(d)(1). Claims under the MMWA depend upon the disposition of the underlying state law warranty claims. See Johansson v. Cent. Garden & Pet Co., 804 F. Supp. 2d 257, 265 (D.N.J. 2011) ("A claim under the MMWA relies on the underlying state law claim.") Thus, if there exists no actionable warranty claim, there can be no violation of the MMWA. See id. (dismissing MMWA claims based on breach of implied warranty because breach of implied warranty claims had been dismissed for lack of privity); In re: Ford Motor Co. Ignition Switch Prods. Liability Litig., No. 96-1814, 2001 WL 1266317, at *24 (D.N.J .Sept. 30, 1997) (Simandle, J.) (dismissing MMWA claims against defendant because all express and implied warranty claims against defendant had been dismissed).

Having failed to state a viable state law claim for breach of express warranty, Plaintiffs' derivative MMWA claim must also be dismissed. See Cooper v. Samsung Elecs. Am., Inc., 374 F. App'x 250, 254 (3d Cir. 2010) (affirming dismissal of Magnuson-Moss Act claims that were based on state law breach of warranty claims that had been dismissed); Demorato v. Carver Boat Corps., No. 06-240, 2007 WL 1456207, at *8 ("Breach of warranty actions

36

that fail under state law will also fail under the Magnuson-Moss
Act."). Since Plaintiffs have stated a plausible state law claim
for breach of the implied warranty of merchantability, and
Defendant has offered no viable argument for dismissal of the
related MMWA claim, the Court will, at this time, permit the
MMWA claim based on breach of the implied warranty of
merchantability to proceed. See In re Shop-Vac Mktg. & Sales
Practices Litig., 2014 WL 3557189, at *10 (M.D. Pa. July 17,
2014).[11]

---

[11] Defendant argues, in a single passing sentence, that
Plaintiffs failed to satisfy 15 U.S.C. § 2310(e) of the MMWA by
"fail[ing] to allege that Rheem was afforded an opportunity to
cure a purported breach of warranty." (Def. Br. at 21 n.6.) See
15 U.S.C. § 2310(e) ("No action . . . may be brought under
subsection (d) for failure to comply with any obligation under
any written or implied warranty or service contract, . . .
unless the [warrantor] . . . is afforded a reasonable
opportunity to cure such failure to comply."). The alleged
facts, however, show that Argabright and Montano were ultimately
compensated by Defendant for the price of the evaporator coil,
which of course implies that they sought a remedy from Defendant
and gave Defendant a "reasonable opportunity" to cure the
defect. See, e.g., Ventura v. Ford Motor Corp., 433 A.2d 801,
812 (N.J. Super. Ct. App. Div. 1981) (finding that defendant was
given reasonable opportunity to cure defect under 15 U.S.C.
§ 2310(e) when purchaser made defendant's employee aware of
"some difficulty with the car"). It remains to be seen, however,
whether Plaintiff can prove all of the other elements of an MMWA
claim. See Temple v. Fleetwood Enters., Inc., 133 Fed. App'x
254, 268 (6th Cir. 2005) (noting that an actionable claim for
violation of the MMWA requires four elements: "that (i) the item
at issue was subject to a warranty; (ii) the item did not
conform to the warranty; (iii) the seller was given reasonable
opportunity to cure any defects; and (iv) the seller failed to
cure the defects within a reasonable time or a reasonable number
of attempts."). Nevertheless, as Defendant does not raise any

### D. Fraudulent Concealment and Negligent Misrepresentation (Counts III and IV)

Defendant argues that the claims for fraudulent concealment (Count III) and negligent misrepresentation (Count IV) have not been pleaded with the sufficient particularity required for fraud claims under Fed. R. Civ. P. 9(b); that there is no fiduciary duty between Defendant and Plaintiffs to support an omission-based negligent misrepresentation claim; and that these claims are barred by the economic loss rule. Because the Court agrees that the presently-alleged grounds are insufficient to show that Defendant knowingly or negligently misrepresented or omitted a material fact about a possible defect in their HVAC units, the Court will grant this portion of Defendant's motion and dismiss Counts III and IV without prejudice.

#### 1. Fraudulent Concealment

Plaintiffs argue that Defendant is liable for fraudulent concealment under New Jersey law because it knew of a possible defect in its HVAC units and failed to disclose it at the time of purchase, and affirmatively misrepresented, through advertising and in its Warranty, that its HVAC units would be long-lasting, durable, and free of any defects in quality and workmanship. (Pl. Br. at 17-20.)

---

other objection under the MMWA at this juncture, the Court will allow the claim to proceed.

"[I]n its most general and fundamental conception," fraud "consists of the obtaining of an undue advantage by means of some act or omission that is unconscientious or a violation of good faith." Jewish Ctr. of Sussex Cty. v. Whale, 432 A.2d 521, 524 (N.J. 1981). To prove fraudulent concealment or misrepresentation under New Jersey law, a plaintiff must establish five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997); see also Weske v. Samsung Elecs., Am., Inc., 42 F. Supp. 3d 599, 607 (D.N.J. 2014) (listing same five elements). These factors must be pleaded with particularity under Rule 9(b) to place the defendant on notice of the precise misconduct with which it is charged. See Byrnes v. DeBolt Transfer, Inc., 741 F. 2d 620, 626 (3d Cir. 1984) ("We agree, of course, that fraud, and thus fraudulent concealment, must be pleaded with particularity."); Fuqua v. Bristol-Myers Squibb Co., 926 F. Supp. 2d 538, 549 (D.N.J. 2013).

The Court agrees with Defendant that this claim must be dismissed. A claim for fraudulent concealment based on either an affirmative misrepresentation or an omission requires showing

39

that defendant had actual knowledge of the falsity of a fact, or knowledge of the omitted fact. Here, Plaintiffs have not pleaded with sufficient particularity that Defendant knew about the alleged defect in its product when Plaintiffs purchased it. The Court has already explained in detail why the allegations at most could suggest that Defendant were alerted to a possible defect in 2012, see supra Part IV.A.3, and will not repeat that explanation here. The Complaint contains no facts to support that Defendant was likely aware of a problem before then, and since Plaintiffs purchased their HVAC units in 2010 and 2011, it fails to support that Defendant knowingly misrepresented or suppressed a material fact about the quality and longevity of its product to Plaintiffs at the time of sale. See Stevenson v. Mazda Motor of Am., Inc., No. 14-5250, 2015 WL 3487756, at *8-9 (D.N.J. June 2, 2015) (dismissing fraudulent concealment claim because allegation that defendant knew of defect in one particular model at the time of sale based on knowledge of defect in other models was speculative and did not meet heightened pleading standard); Spera v. Samsung Elecs. Am., Inc., No. 12-5412, 2014 WL 1334256, at *6 (D.N.J. Apr. 2, 2014) (dismissing consumer fraud claim because plaintiffs failed to state sufficient facts to show that defendant knew of alleged defects prior to sale); Weske v. Samsung Elecs. Am., Inc., 2012

40

WL 833003, at *5 (D.N.J. Mar. 12, 2012) (allegations showed that
consumers complained of product after the plaintiffs had already
purchased the product and thus did not establish defendants'
knowledge and concealment of the defect at the time of
plaintiffs' purchase).

In addition, with respect to Plaintiffs' allegation that
Defendant was aware of and failed to disclose a potential defect
in their HVAC units at the time of Plaintiffs' purchase, that
claim of fraudulent omission fails as a matter of law. "[W]here
a claim for fraud is based on silence or concealment, New Jersey
courts will not imply a duty to disclose, unless such disclosure
is necessary to make a previous statement true or the parties
share a 'special relationship.'" Lightning Lube, Inc. v. Witco
Corp., 4 F.3d 1153, 1185 (3d Cir. 1993). "Recovery for
fraudulent concealment requires proof that [the] defendant was
*legally obligated to disclose* [the information]." Id. (emphasis
added) (citing Viviano v. CBS, Inc., 597 A.2d 543, 548 (N.J.
Super. Ct. App. Div. 1991)); see also Berman v. Gurwicz, 458
A.2d 1311, 1313-14 (N.J. Super. Ct. Chanc. Div. 1981) ("If
either party to a transaction conceals some fact which is
material, which is within his own knowledge, and *which it is his
duty to disclose*, he is guilty of actual fraud." (internal
quotations and citation omitted)).

41

In New Jersey, such a duty to disclose arises: (1) when
there is a fiduciary relationship between the parties; (2) when
one party expressly reposits trust in another party, or else
from the circumstances, such trust necessarily is implied; and
(3) when the relationship involving the transaction is "so
intrinsically fiduciary that a degree of trust and confidence is
required to protect the parties," for example, an insurance
contract. Lightning Lube, 4 F.3d at 1185 (3d Cir. 1993); see
also Berman, 458 A.2d at 1313-14 (describing the three classes
of transactions in which a duty to disclose arises). For a duty
to disclose to arise, one party must "expressly repose[ ] a
trust and confidence in the other; or else from the
circumstances of the case, the nature of their dealings, or
their position towards each other, such a trust and confidence
in the particular case [must be] necessarily implied." Berman,
458 A.2d at 1313.

Plaintiffs assert only that Defendant had knowledge of a
latent defect and that Defendant had a duty to disclose "the
actual quality of the Rheem HVACs and the true nature of the
warranties," (Compl. ¶¶ 114, 124), but these conclusory
allegations are clearly insufficient to establish that Defendant
and Plaintiffs had a special relationship giving rise to an
affirmative duty to disclose. No fiduciary or implied fiduciary

42

relationship existed between Plaintiffs and Defendant, and nothing in Plaintiffs' Complaint suggests that Defendant "did anything to encourage plaintiffs to repose special trust or confidence in their advice, thereby inducing plaintiffs' reliance." Green v. G.M.C., No. A-2831-01T-5, 2003 WL 21730592, at *8 (N.J. Super. Ct. App. Div. July 10, 2003). The mere fact that Plaintiff trusted and relied on Defendant "is insufficient to show a special relationship requiring a duty to disclose." Stevenson v. Mazda Motor of Am., Inc., No. 14-5250, 2015 WL 3487756, at *9 (D.N.J. June 2, 2015).

Because Plaintiffs have failed to state with any particularity facts showing that Defendant knew of a potential defect adversely affecting the quality and longevity of their HVAC units when they made their misrepresentations and omissions, Plaintiffs' claim for fraudulent concealment must be dismissed, without prejudice to the right to seek a curative amendment to the Complaint.

2. Negligent Misrepresentation

Under New Jersey law, "[a] cause of action for negligent misrepresentation may exist when a party negligently provides false information." Karu v. Feldman, 574 A.2d 420, 425 (N.J. 1990). To prevail on a negligent misrepresentation claim, a plaintiff must prove that the defendant negligently made an

43

incorrect statement upon which the plaintiff justifiably relied. See Alin v. Am. Honda Motor Co., Inc., No. 08-4825, 2010 WL 1372308, at *13 (D.N.J. Mar. 31, 2010); Green v. Morgan Props., 73 A.3d 478, 457 (N.J. 2013). While an act of omission may constitute a viable negligent misrepresentation claim, see S. Broward Hosp. Dist. v. MedQuist, Inc., 516 F. Supp. 2d 370, 397 (D.N.J. 2007), aff'd in part, 258 Fed. App'x. 466 (3d Cir. 2007), a plaintiff may not bring such a claim "unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 279-80 (N.J. 2002); see also Henderson v. Volvo Cars of N. Am., LLC, No. 09-4146, 2010 WL 2925913, at *11 (D.N.J. July 21, 2010).[12]

---

[12] Although Defendant suggests that heightened pleading standards should also be applied to Plaintiffs' claim of negligent misrepresentation (see Def. Br. 23), the Court finds Rule 9(b) inapplicable because the claim here is premised on negligence rather than fraud. See In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 272-73 (3d Cir. 2006) ("[W]here the claims are expressly premised on negligence rather than fraud, Rule 9(b) has been held inapplicable"); Marrin v. Capital Health Sys., Inc., No. 14-2558, 2015 WL 404783, at *9 (D.N.J. Jan. 29, 2015) (declining to apply Rule (9)'s heightened pleading standards to negligent misrepresentation claim); Donachy v. Intrawest U.S. Holdings, Inc., No. 10-4038, 2012 WL 869007, at *5 (D.N.J. Mar. 14, 2012) ("[B]ecause Plaintiffs' negligent misrepresentation claim is specifically alleged as a separate claim [from the fraud claims], it is not subject to Rule 9(b)'s heightened pleading requirements, notwithstanding the significant overlap in allegations between the claims."); see also Rawson Food Servs., Inc. v. TD Bank, N.A., No. 13-3084, 2014 WL 809210, at *5 (D.N.J. Feb. 28, 2014) ("Rule 9(b) does not apply to a freestanding negligence claim"). The Court will therefore apply the ordinary pleading standards of Rule 8 to

Plaintiffs' claim for negligent misrepresentation fails for the same reasons that Plaintiffs' fraudulent omission fails. There are no facts whatsoever to support that Defendant was negligent in 2010 and 2011 when it warranted to Plaintiffs that its HVAC units would be free from any defects. Nothing suggests, for example, that purchasers had begun to experience problems with their HVAC units prior to 2011, or that Defendant previously had issues with copper alloy evaporator coils, or had recalled other similarly designed HVAC units for refrigerant leakage. Indeed, there are no allegations at all about known or suspected problems with Defendant's products before 2012, the year of the first consumer reviews listed in Plaintiffs' Complaint. As Plaintiffs have "provide[d] no factual support for why Defendant['s] behavior was negligent, or how the specifically alleged duties of care were breached," their claim for negligent misrepresentation will be dismissed. McQueen v. BMW of N. Am., LLC, No. 12-6674, 2013 WL 4607353, at *9 (D.N.J. Aug. 29, 2013).

Additionally, an omission-based negligent misrepresentation claim, like a claim of fraudulent concealment, is unsupported on the current facts because Plaintiffs have not shown that Defendant's relationship with Plaintiffs created a duty disclose

---

Plaintiffs' negligent misrepresentation claim.

the alleged defect. See Karu v. Feldman, 574 A.2d 420, 426 (N.J. 1990); S. Broward Hosp. Dist, 516 F. Supp. 2d at 397. Courts in this district have not hesitated to dismiss negligent misrepresentation claims by a purchaser against a manufacturer, absent allegations showing a special relationship. Nothing in the Complaint suggests the existence of an implied fiduciary duty, or that Plaintiffs "reposed special trust in [D]efendant prior to purchase," and there is ample support for dismissal. See Peruto v. TimberTech Ltd., 126 F. Supp. 3d 447, 457 (D.N.J. Aug. 26, 2015) (Simandle, J.); Stevenson, 2015 WL 3487756, at *9-10 (car manufacturer had no duty to disclose alleged defect to car purchaser because "there [were] no allegations to suggest that defendant did anything that would have encouraged Plaintiff to place particular trust or confidence in it"); Coba v. Ford Motor Co., 2013 WL 244687 at *12 (D.N.J. Jan. 22, 2013) ("New Jersey Courts have found no special relationship between individual consumers and automobile manufacturers that would impose a duty to disclose on the manufacturers"); Alin v. Am. Honda Motor Co., No. 08-4825, 2010 WL 1372308, at *14 (D.N.J. Mar. 31, 2010) (allegations that defendant car manufacturer failed to disclose a defect during sale were "insufficient to state a claim for negligent misrepresentation by omission" because there was no fiduciary or intrinsically fiduciary duty

46

and plaintiff did not repose a special trust in defendant when he entered into car lease); <u>Green v. G.M.C.</u>, No. A-2831-01T-5, 2003 WL 21730592, at *8 (N.J. Super. Ct. App. Div. July 10, 2003) (car manufacturer similarly had no duty to disclose a defect to purchasers of its cars).

Accordingly, the Court will dismiss without prejudice Plaintiffs' claim of negligent misrepresentation.[13]

**E. Statutory Claims (Counts VII, VIII, and IX)**

The New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 <u>et seq.</u>, the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1521 <u>et seq.</u>, and New York General Business Law ("NYGBL") § 349, all prohibit deceptive practices in connection with the sale or advertisement of consumer goods. <u>See</u>, <u>e.g.</u>, <u>Daaleman v. Elizabethtown Gas Co.</u>, 390 A.2d 566, 569 (N.J. 1978) (noting that NJCFA is designed to address "sharp practices and dealings in the marketing of merchandise . . . whereby the consumer could be victimized by being lured into a purchase

---

[13] Because Plaintiffs' claims for fraudulent concealment and negligent misrepresentation have been dismissed on the grounds above, the Court need not reach the question of whether the claims are barred by the economic loss rule. <u>See</u> <u>Chirinos de Alvarez v. Creole Petroleum Corp.</u>, 613 F.2d 1240, 1249 (3d Cir. 1980) (declining to reach the issue of whether defendant was a proper party to the action "[b]ecause we have dismissed the action on other grounds"); <u>Panarello v. City of Vineland</u>, No. 12-4165, -- F. Supp. 3d. ---, 2016 WL 475246, at *6, n.9 (D.N.J. Feb. 8, 2016) (declining to reach additional arguments for dismissal).

through fraudulent, deceptive or other similar kind of selling
or advertising practices."); 349 A.R.S. § 44-1522(A)
(prohibiting "deception, deceptive or unfair act or practice" in
connection with the sale or advertisement of merchandise); Small
v. Lorillard Tobacco Co., 720 N.E. 2d 892, 897 (N.Y. 1999)
("Generally, claims under [N.Y. GBL § 349] are available to an
individual consumer who falls victim to misrepresentations made
by a seller of consumer goods through false or misleading
advertising.").

 "The capacity to mislead is the prime ingredient of all
types of consumer fraud." Cox v. Sears Roebuck & Co., 647 A.2d
454, 462 (N.J. 1994); Fenwick v. Kay Am. Jeep, Inc., 371 A.2d
13, 16 (N.J. 1977). Thus, to determine whether a defendant's
advertisements and marketing statements violated the consumer
fraud statute, courts examine "the overall impression created by
an advertisement" to decide whether it is "misleading and
deceptive to an ordinary reader." Miller v. Am. Family
Publishers, 663 A.2d 643, 654 (N.J. Super. Ct. Chanc. Div.
1995); see also Oswego, 647 N.E. 2d at 745 (inquiry is limited
to whether representations or omissions are "likely to mislead a
reasonable consumer acting reasonably under the
circumstances.").

 False promises, misrepresentations, and concealment or

omission of material facts all constitute deceptive practices under these statutes.[14] But importantly, unlike the common law claim of fraudulent concealment, a defendant's knowledge or belief of the falsity of a statement, or intent to deceive, are not required to establish a violation under the New Jersey, New York, and Arizona consumer fraud statutes.[15]

In addition to identifying the deceptive practice or statement, the three consumer fraud statutes require the

---

[14] See N.J.S.A. 56:8-2 (defining unlawful practice to include "deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment . . . ."); Gaidon v. Guardian Life Ins. Co. of Am., 725 N.E. 2d 598, 604 (N.Y. 1999) (defining "deceptive act or practice" under NYGBL § 349 "as a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances" (internal quotations and citation omitted)); A.R.S. § 44-1522(A) (listing "false pretense, false promise, misrepresentation, or concealment, suppression, or omission of any material fact" as prohibited acts).

[15] See Monogram Credit Card Bank of Ga. v. Tennessee, 914 A.2d 847, 853 (N.J. Super. Ct. App. Div. 2007) (where alleged violation consists of affirmative misrepresentation, "intent is not an essential element," and the conduct is unlawful "even if unaccompanied by knowledge of its falsity or an intention to deceive."(emphasis added)); see also DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 64 A.3d 579, 587 (N.J. Super. Ct. App. Div. 2013); Powers v. Guar. RV, Inc., 278 P.3d 333, 338 (Ariz. Ct. App. 2012) (defendant "need not intend to deceive to violate the [ACFA]," nor does the statute require that the defendant know that the misrepresentations are false); Gaidon v. Guardian Life Ins. Co. of Am., 725 N.E. 2d 598, 603 (N.Y. 1999) (because NYGBL § 349 "contemplates actionable conduct that does not necessarily rise to the level of fraud," plaintiff need not establish intent to defraud or mislead); Small v. Lorillard Tobacco Co., Inc., 720 N.E. 2d 892, 897 (N.Y. 1999).

49

plaintiff to establish that he or she suffered an injury that was caused by the misrepresentation. The NJCFA, for example, requires a showing of "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009). Likewise, to prove a claim under NYGBL § 349, a plaintiff needs show that a defendant engaged in "an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." Gaidon v. Guardian Life Ins. Co. of Am., 725 N.E. 2d 603, 604 (N.Y. 1999) (internal quotations and citation omitted); see also Koch v. Acker, Merrall & Condit Co., 967 N.E. 2d 675, 675 (N.Y. 2012)). Similarly, to succeed on a claim of consumer fraud under the ACFA, a plaintiff "must show (1) a false promise or misrepresentation made in connection with the sale or advertisement of 'merchandise,' and (2) consequent and proximate injury resulting from the misrepresentation." Watts v. Medicis Pharm. Corp., 365 P.3d 944, 953 (Ariz. 2016); see also Kuehn v. Stanley, 91 P.3d 346, 351 (Ariz. Ct. App. 2004).

The claims under the NJCFA and the ACFA are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires particularized pleading for the conduct underlying

fraud claims. See, e.g., Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (noting that "[t]he stringent pleading restrictions of Rule 9(b)" apply to fraud claims under the NJCFA); Silving v. Wells Fargo Bank, NA, 800 F. Supp. 2d 1055, 1075 (D. Ariz. 2011). "This requires a plaintiff to plead the date, time, and place of the alleged fraud, or otherwise inject precision into the allegations by some alternative means." Grant v. Turner, 505 Fed. App'x. 107, 111 (3d Cir. 2012), cert. denied, 133 S. Ct. 2770 (2013); see also Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986) (plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.").

Claims under N.Y. GBL § 349, however, are examined under the more liberal pleading standard of Fed. R. Civ. P. 8(a). Unlike the NJCFA and the CFA, N.Y. GBL § 349 prohibits all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." Section 349 "extends well beyond common-law fraud to cover a broad range of deceptive practices," and as such, claims under § 349 are not subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005); see also Angermeir v. Cohen, 14 F. Supp. 3d

51

134, 145 (S.D.N.Y. 2014) (stating same); In re Ford Fusion and
C-Max Fuel Econ. Litig., No. 13-2450, 2015 WL 7018369, at *17
(S.D.N.Y. Nov. 12, 2015) ("[C]ourts in the Second Circuit have
consistently found that claims under New York General Business
Law § 349 are not subject to the heightened pleading standards
of Rule 9(b)"); Leonard v. Abbott Labs., Inc ., No. 10-4676,
2012 WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012) (noting
"categorical rule" that § 349 claims are not subject to the Rule
(9) pleading standard, "regardless of whether they 'sound in
fraud,' or are premised on specific misrepresentations").

Defendant argues that the Complaint fails to identify with
any specificity the fraudulent statements or misrepresentations
upon which Plaintiffs base their claims; that Rheem's
advertising statements were not material misrepresentations
because they were "mere puffery"; and that Plaintiffs fail to
allege with the requisite particularity that they were "directly
injured as a result" of Defendant's misrepresentations. (Def.
Br. at 29-34.) Defendant also argues that Fecht's claim under
N.Y. GBL § 349 is barred by a three-year statute of limitations.
Each of these arguments will be addressed below.

The Court holds that although Plaintiffs have pleaded the
"who, what, when, and where" of Defendant's misconduct with
specificity, the allegedly deceptive advertising statements are

too vague to constitute misrepresentations of material fact, and
the Complaint fails to state a claim for relief under either
Rule 8(a) and Rule 9(b). The Court will, however, dismiss the
claim without prejudice because the defects in the Complaint are
not fatal, and will also permit Plaintiff Fecht to join in any
amendment of Count VIII (violation of N.Y. GBL 349), as her
claim is not time-barred.

1. Plaintiffs Have Pleaded Allegations of Consumer Fraud with
   Particularity, but They Do Not Establish a Claim for Relief

Defendant's first and primary argument is that the
Complaint "fails to set forth even one allegation of a specific
fraudulent statement," and does not reach the level of
particularity required for fraud-based claims. (See Def. Br. at
31-32.) The Court cannot agree. Plaintiffs cited several of
Defendant's advertising statements at length in their Complaint,
which they claim constitute "specific misrepresentations about
the quality of the HVAC," in violation of the consumer fraud
statutes. (Pl. Br. at 25.) The statements, taken from Rheem's
website, advertise "[t]op-quality, innovative products with the
latest technology, dependable performance, great warranties and
excellent service and support," and that Rheem products are
"routinely tested and certified" and "meet or exceed rigorous
industry and regulatory standards for quality, reliability,
[and] efficiency." The Complaint also cited to Rheem's Warranty

53

promising that the products will be "free from defects in materials and workmanship . . . in normal use and service." (See Compl. ¶¶ 49, 50, 54.)[16] Plaintiffs identified the precise advertising statements upon which they base their claims and quoted the marketing statements directly from Defendant's website in their Complaint. Rule 9(b) does not require more.

The problem, however, is not the hurdle posed by Rule 9(b)'s particularity requirement. The problem is that the allegedly deceptive advertising claims are too vague to constitute misrepresentations of material fact and amount to mere puffery. "[N]ot just any erroneous statement will constitute a misrepresentation prohibited by the [Consumer Fraud

---

[16] The Complaint quotes the following statements from Defendant's website in full:

1. We simply offer the finest air conditioning solutions in the business. Top-quality, innovative products with the latest technology, dependable performance, great warranties and excellent service and support. All of this is why we confidently say, "Relax, It's Rheem."

2. All Rheem products meet or exceed rigorous industry and regulatory standards for quality, reliability, efficiency, and air & water quality. From design and fabrication to finished product assembly, each phase in the manufacturing process is rigorously monitored and measured to ensure the highest quality, durability and operating excellence. Rheem products are routinely tested and certified by various government and third-party testing labs to ensure quality standards.

(Compl. ¶¶ 49, 50.)

Act]. The misrepresentation has to be one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 366 (N.J. 1997). "A material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." Bildstein v. MasterCard Int'l, Inc., 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (internal quotations and citation omitted). By contrast, statements that are conclusory, or that constitute merely "vague and ill-defined opinions or "puffery" "are not assurances of fact and thus do not constitute misrepresentations." CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P., 940 F. Supp. 2d 141, 159 (D.N.J. 2013) (internal quotations and citation omitted); see also N.J. Citizen Action v. Schering-Plough Corp., 842 A.2d 174, 177 (N.J. App. Div. 2003); Sheth v. N.Y. Life Ins. Co., 273 A.D.2d 72, 74 (N.Y. App. Div. 2000) (purported misrepresentations that are "conclusory and/or constitute mere puffery, opinions of value or future expectations" may not form basis for fraudulent misrepresentation).

The statements cited by Plaintiffs as the basis for their consumer fraud claims are conclusory and highly subjective, falling on the side of opinion rather than fact. The claims that

Rheem products are "top-quality," "innovative," and "dependable" with "great warranties" and "excellent service and support" are general claims made in the context of advertisements to the general public. They are neither measurable nor concrete, and are simply too imprecise to be considered material. See, e.g., Tatum v. Chrysler Grp. LLC, No. 10-4269, 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011) (advertising claims that "reliable" and "durable" "amounted to nothing more than non-actionable hyperbole or puffery."); Soilworks, LLC v. Midwest Indus. Supply, Inc., 575 F. Supp. 2d 1118, 1133 (D. Ariz. 2008) (noting that other courts have found the word "innovative" and "the generalized and vague statements of product superiority" to be non-actionable puffery) (citations omitted); Serbalik v. General Motors Corp., 246 A.D.2d 724, 725 (N.Y. App. Div. 1998) (defendant's advertisement claiming that car "would perform excellently" and was "of high quality" constituted mere puffery); Scaringe v. Holstein, 477 N.Y.S.2d 903, 903 (N.Y. App. Div. 1984) (defendant's advertisement claiming that car was in "excellent condition" constituted puffery); see also In re Sony HDTV Television Litig., 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) (claims that televisions were of "superior" or "high" quality were considered "mere puffery" and did not create a reasonable expectation).

56

Likewise, Defendant's assertions that their products are routinely tested and certified" and "meet or exceed rigorous industry and regulatory standards," are too vague to mislead the consumer. "General statements about compliance with safety and quality standards are non-actionable 'puffery' where . . . they fail to identify specific requirements or standards." Leonard v. Abbot Labs., Inc., 2012 WL 764199, at *22 (E.D.N.Y. Mar. 5, 2012) (statement that defendant is "dedicated to the highest standards of manufacturing and marketing – and to complying with all applicable laws and regulations" was not actionable); see also Private Jet Servs. Grp., Inc., No. 05-98, 2006 WL 2864057, at *5 (D.N.H. Oct. 4, 2006) (statements about the high quality of the defendant's services were "mere puffery" and therefore not actionable under the NHCPA because "they do not provide any implied or express warranties as to quality or any representations about compliance with specific requirements or standards"); Cleveland Mack Sales, Inc. v. Foshee, No. 14–59, 2001 WL 1013393, at *4 (Tex. Ct. App. Sept. 6, 2001) ("Imprecise or vague statements are generally considered puffing, and are not actionable under the DTPA, while statements of material fact are actionable."). Defendant's claims, which are "vague or either mere puffery or hyperbole" "are not material, even if they were misleading." Leonard v. Abbot Labs., Inc., No 10-4676,

57

2012 WL 764199, at *21 (E.D.N.Y. Mar. 5, 2012).

As for the statement in Defendant's Warranty, the Court has already explained why the Warranty merely assured Plaintiffs that Rheem would cover the cost of repairing or replacing any part that malfunctioned within five years. The Warranty did not create an expectation that Defendant's HVAC unit would function without defects or repairs for five years. See supra Part IV.A.1. And, even if Defendant could be said to have breached its implied warranty of merchantability, a breach of warranty alone does not violate a consumer protection statute. Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994) (a breach of warranty or any breach of contract is "'not per se unfair or unconscionable'" and does not violate the NJCFA) (quoting D'Ercole Sales, Inc. v. Fruehauf Corp., 501 A.2d 90, 998 (N.J. Super. Ct. App. Div. 1985).

Finally, the words and phrases Plaintiffs claim are misleading – "top-quality," "innovative," "superior," "dependable," "latest technology," "excellent service and support," "great warranty," "meets industry standards for reliability and efficiency" – have nothing to do with the longevity of Rheem's parts. These advertising claims are immaterial, not only because they are mere puffery, but also because they have no bearing on and create no expectation about

when certain parts would need servicing or repair. See Leonard, 2012 WL 764199, at *21 (dismissing claim under N.Y. GBL § 349 in part because "the majority of the [advertising] statements" cited by Plaintiffs related to product's quality and nutritious value and had nothing to do with whether the product was safe for ingestion).

Plaintiffs point to two additional instances of false advertising with respect to Fecht and Montano, but the allegations are equally vague. The Complaint identified two Rheem Top Contractors, Daverio Mechanical ("Daverio") and Oasis Air Conditioning & Heating ("Oasis"), who worked with Fecht and Montano to purchase their HVAC units in 2010 in New York and in 2011 in Arizona, respectively. (Compl. ¶¶ 71-72, 80-81.) Rheem contractors "recommend Rheem products to their customers," (id., ¶ 73), and the Complaint alleges that Defendant's representatives told both Fecht and Montano "that Rheem was a quality brand and that the Rheem HVAC was suitable for [Plaintiffs'] home because it was superior to comparable products from other manufacturers." (Id. ¶¶ 74, 82.) The Complaint notes the general content of the conversations but goes no further, failing to specify what precise representations were made by Daverio to Fecht, and Oasis to Montano, regarding the "quality" and "superiority" of Defendant's product. Without

59

additional detail, the particular falsity and materiality of these statements cannot be established.[17]

Consequently, although the misrepresentations have been pleaded with particularity, the allegations fail to state a claim for relief.

2. <u>Plaintiffs Have Not Sufficiently Pleaded Causation</u>

The Court will briefly address Defendant's third argument,

---

[17] To the extent Plaintiffs rely on a theory that Defendant committed consumer fraud through material omission or failure to warn about a potential defect, that argument must be dismissed. Plaintiffs cannot plead an omission-based claim because the Complaint contains no facts from which to reasonably infer that Defendant knew or might have known, in 2010 and 2011, that there was a defect in its product. <u>See</u> <u>supra</u> Part IV.A.3; <u>see also</u> <u>Gomez-Jimenez v. N.Y. Law Sch.</u>, 103 A.D.3d 13, 16-17 (N.Y. App. Div. 2012) (omission-based claims under N.Y. GBL § 349 "are appropriate where the business alone possesses material information that is relevant to the consumer and fails to provide this information." (internal quotations and citation omitted)); <u>see also</u> <u>Alban v. BMW of N. Am., LLC</u>, No. 09-5398, 2010 WL 3636253, at *10 (D.N.J. Sept. 8, 2010) ("[T]he NJCFA does not require manufacturers to disclose things they do not know. Thus, unless a defendant manufacturer knows with certainty that a product will fail, it does not violate the NJCFA by failing to inform its consumers of the possibility of failure."); <u>Cox v. Sears Roebuck & Co.</u>, 647 A.2d 454, 462 (N.J. 1994) ("[W]hen the alleged [NJCFA] consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent <u>is</u> an essential element of fraud.") (emphasis in original). A claim based on a material omission under the ACFA must also be dismissed because the Arizona consumer fraud statute requires – and the allegations fail to show – a duty of disclosure. <u>See</u> <u>supra</u>, Part IV.D.1; <u>see also</u> <u>Grimmelman v. Pulte Home Corp.</u>, No. 08-1878, 2010 WL 2744943, at *4 (D. Ariz. July 9, 2010) ("Under both the ACFA and the negligent misrepresentation causes of action, an omission is actionable only when there is a duty to communicate." (citing <u>Haisch v. Allstate Ins. Co.</u>, 5 P.3d 940, 944 (Ariz. Ct. App. 2000)).

that Plaintiffs have not sufficiently pleaded the element of
causation. The NJCFA and N.Y. GBL § 349 all require the
plaintiff to establish a "causal connection between some injury
to the plaintiff[] and some misrepresentation made by the
defendant." Small v. Lorillard Tobacco Co., Inc., 252 A.D.2d 1,
15 (N.Y. App. Div. 1998); see also Bosland v. Warnock Dodge,
Inc., 964 A.2d 741, 749 (N.J. 2009) (requiring a "causal
relationship between the unlawful conduct and the ascertainable
loss"). The ACFA requires proof that "a consumer relie[d], even
unreasonably, on false or misrepresented information." Kuehn v.
Stanley, 91 P.3d 346, 351 (Ariz. Ct. App. 2004); Grimmelmann v.
Pulte Home Corp., 2010 WL 2744943, at *7 (D. Ariz. July 9, 2010)
("'Reliance is a required element under Arizona's consumer fraud
statute.'" (quoting Kuehn, 91 F.3d at 351)).

       To properly allege causation or reliance, "'a plaintiff
must state in his complaint that he has seen the misleading
statements of which he complains before he came into possession
of the products he purchased.'" Goldemberg v. Johnson & Johnson
Consumer Co., 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (citing
Gale v. Int'l Bus. Machs. Corp., 9 A.D.3d 446, 447 (N.Y. App.
Div. 2004) (discussing causation in the context of N.Y. GBL §
349)). If the plaintiff did not see any of the statements before
the purchase, "[the statements] could not have been the cause of

                                   61

plaintiff's injury, there being no connection between the
deceptive act and the plaintiff's injury." <u>Gale</u>, 9 A.D.3d at 47.

The Complaint is devoid of any facts which would create an
inference that, at the time of their purchase, Argabright,
Fecht, or Montano were aware of the allegedly false advertising
claims, which Plaintiffs obtained from Defendant's website for
purposes of filing the instant action.[18] The Complaint does not
indicate, for example, when these statements were posted on
Defendant's site; whether they existed in their current form
when Plaintiffs made their purchase in 2010 and 2011; and, if
they were, whether Argabright, Fecht, and Montano ever went on
Defendant's website and viewed these statements before choosing
their HVAC systems. For example, Plaintiffs plead that
Argabright decided on a Rheem HVAC system "after soliciting
quotes and assessing the value and compatibility of several
competing options." (Compl. ¶ 65.) There is no indication that
Argabright, who according to Plaintiffs' own Complaint appeared

---

[18] Although Plaintiffs point out that there is a presumption of
causation "[w]here the representations are in written and
uniform materials presented to each prospective plaintiff," (<u>see</u>
Pl. Br. at 28 (citing <u>Elias v. Ungar's Food Prods.</u>, 252 F.R.D.
233, 249 (D.N.J. 2008)), that is not the case here. Plaintiffs
took the advertising claims from Defendant's website, and it is
not reasonable to presume that each consumer visited Defendant's
website prior to purchasing Defendant's product. (<u>See</u> Compl. ¶
49 n.2 & ¶ 3 n.3.) If a plaintiff did so, however, the plaintiff
should so allege such reliance on the website statements before
purchasing the product.

to have based his purchasing decision on "compatibility" and "value," was aware of Defendant's representations about the "quality" and "excellence" of their product at the time of his purchase. See In re Riddell Concussion Reduction Litig., 77 F. Supp. 3d 422, 433-34 (D.N.J. 2015) (Simandle, J.) (finding that plaintiffs failed to plead misrepresentation with sufficient specificity because they listed examples of defendants' marketing statements "without identifying which specific statement(s), if any, Plaintiffs were exposed to"); Lieberson v. Johnson & Johnson Consumer Co., 865 F. Supp. 2d 529, 539 (D.N.J. 2011) (finding plaintiff did not satisfy Rule 9(b) where plaintiff did not identify when statements were made or whether and when plaintiff actually viewed them). Thus, the statutory consumer fraud claims also fail for failure to show causation.[19]

3. Fecht's Claim Under the N.Y. GBL § 349 is Not Barred by the Statute of Limitations

"Claims pursuant to General Business Law § 349 are governed by the three-year limitation period set forth in CPLR 214(2)." Morelli v. Weider Nutrition Grp., Inc., 275 A.D.2d 607, 608

---

[19] Because the Court dismisses Plaintiffs' consumer fraud claims for failure to plead misrepresentation of a material fact, and dismisses Plaintiffs' claims on an alternative ground, it need not reach the argument, raised only in a footnote in Defendant's brief, that Plaintiffs have not shown an injury or an "ascertainable loss." (Def. Br. at 34 n.10; Def. Reply Br. at 18 n.28.)

(N.Y. App. Div. 2000). The action must be commenced within three years of the date of accrual, which occurs when the plaintiff is injured by the deceptive act or practice that violated the statute. See Gaidon v. Guardian Life Ins. Co. of Am., 750 N.E. 2d 1078, 1083 (N.Y. 2001). The date of injury occurs "'when all of the factual circumstances necessary to establish a right of action have occurred.'" Statler v. Dell, Inc., 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012) ("Statler II") (quoting Gaidon, 750 N.E. at 1083).

Relying on Defendant's assurances of quality, Fecht chose and purchased her Rheem HVAC unit sometime in 2010. She asserts, however, that her claim did not accrue until either June 18, 2014 or August 12, 2014, when her HVAC began to malfunction and when a new evaporator coil was installed. The Court finds otherwise. "Accrual is not dependent upon any date when discovery of the alleged deceptive practice is said to occur." Statler v. Dell, Inc., 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011) ("Statler I"); see also M & T Mortg. Corp. v. Miller, No. 02-5410, 2009 WL 3806691, at *2 (E.D.N.Y. Nov. 13, 2009). Rather, a claim under N.Y. GBL § 349 first accrues "when plaintiff has been injured by a deceptive act or practice violating section 349." Gaidon, 750 N.E. at 1083. In this case, the gravamen of Fecht's § 349 claim is the alleged misrepresentations that

64

Defendant made about the HVAC unit at the time of sale, in 2010. Because she also alleges that the defect was in place at the time of purchase, the "factual circumstances necessary to establish a right of action" were present in 2010, at least four and a half years before this Complaint was filed. Plaintiffs' claim falls outside the statute of limitations. See Marshall v. Hyundai Motor Am., 51 F. Supp. 3d 451, 462 (S.D.N.Y. 2014) (holding that plaintiffs' § 349 claim, which was based on defendant's alleged misrepresentations and omissions about latent defect in brake system, accrued at the time of purchase and thus was barred by the statute of limitations); Statler, 841 F. Supp. 2d at 484 (plaintiff's § 349 claim, based on defendant's shipping of computers with defective capacitors, accrued at the time of shipping and was time-barred).

Equitable tolling, however, saves Fecht's claim. Under this doctrine, the statute of limitations may be tolled "where a defendant's fraudulent conduct results in a plaintiff's lack of knowledge of a cause of action." Marshall, 51 F. Supp. 3d at 462; see also Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (doctrine of equitable tolling may defeat a statute of limitations defense "when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action."). To benefit from equitable tolling, "the party seeking

65

to invoke the doctrine bears the burden of demonstrating that it was diligent in commencing the action 'within a reasonable time after the facts giving rise to the estoppel have ceased to be operational.'" Marincovich v. Dunes Hotels & Casinos, Inc., 41 A.D.3d 1006, 1010 (2007) (quoting Simcuski v. Saeli, 44 N.Y.2d 442, 450 (1978)).

Drawing all reasonable inference in Plaintiff's favor, the Complaint supports Fecht's contention that she was unaware of the alleged defect until August 12, 2014, when she was informed during a second inspection of her HVAC unit that "the unit's evaporator coil had multiple leaks." (Compl. ¶ 78.) Because Fecht's lack of knowledge was due to Defendant's alleged concealment of the defect and not through any failure of Fecht's own diligence, the Court finds it equitable and appropriate to toll the statute of limitations until August 12, 2014. As this Complaint was filed within one year of that date, on July 6, 2015, Fecht's action is not time-barred.

* * *

Plaintiffs' claims for violations of the NJCFA, the ACFA, and N.Y. GBL § 349 will be dismissed for failure to state a claim. Because additional details may come to light about representations Defendant made to Plaintiffs and Plaintiffs' knowledge of or reliance upon those representations, the defect

66

in Plaintiffs' Complaint is not fatal. Counts VII, VIII, and IX will therefore be dismissed without prejudice.

### F. Equitable Relief (Counts X and XI)

The Court will dismiss without prejudice Plaintiffs' claims for equitable relief, namely their claims for unjust enrichment and declaratory relief, because they are premised on the underlying allegations of deceptive acts and breach of express warranty, which the Court has found insufficiently pleaded. (See Compl. ¶ 211 ("Defendant's acceptance and retention of these benefits conferred upon it as a result of its materially misleading and deceptive acts and practices make it inequitable for Defendant to retain the benefits . . . ."); id. ¶ 217 (seeking declaration that warranty fails of its essential purpose and is unconscionable).) See In re Riddell Concussion Reduction Litig., 77 F. Supp. 3d 422, 439-40 (D.N.J. 2015) (Simandle, J.) (dismissing claims for equitable relief because underlying state law claims for consumer fraud and false advertising, on which equitable relief claims were based, had been dismissed). Counts X (unjust enrichment) and XI (declaratory relief) will be dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion with respect to Counts II (breach of implied warranty)

and V (violation of Magnuson-Moss Warranty Act)[20] and will grant Defendant's motion with respect to the remaining claims. Count I (breach of express warranty) will be dismissed with prejudice, and the remaining claims will be dismissed without prejudice to Plaintiffs' right to seek a curative amendment to the Complaint consistent with this Opinion. The accompanying Order will be entered.

 June 28, 2016 
Date

 s/ Jerome B. Simandle 
JEROME B. SIMANDLE
Chief U.S. District Judge

---

[20] However, the Court will grant Defendant's motion with respect to Counts II and V against Fecht because Fecht's claim is barred by the statute of limitations.