IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

LAWRENCE ARGABRIGHT, VICTORIA
FECHT, and LIBRADO MONTANO, on
behalf of themselves and all
others similarly situated,

        Plaintiffs,

   v.

RHEEM MANUFACTURING COMPANY,

        Defendant.

HONORABLE JEROME B. SIMANDLE

Civil No. 15-5243 (JBS/AMD)


**OPINION**

APPEARANCES:

Melanie H. Muhlstock, Esq.
PARKER WAICHMAN LLP
6 Harbor Park Dr.
Port Washington, NY 11050
    Counsel for Plaintiffs

Aaron Van Nostrand, Esq.
David Jay, Esq.
GREENBERG TRAURIG LLP
500 Campus Drive, Suite 400
P.O. Box 677
Florham Park, NJ 07932
    Counsel for Defendant

**SIMANDLE**, Chief Judge:

## I. INTRODUCTION

This matter comes before the Court on Defendant Rheem
Manufacturing Company's ("Rheem" or "Rheem Manufacturing")
Motion to Dismiss the Amended Complaint. [Docket Item 49.] In
this putative multistate class action, Plaintiffs Lawrence
Argabright ("Argabright"), Victoria Fecht ("Fecht"), and Librado

Montano ("Montano") allege that Defendant manufactured defective residential heating, ventilating, and air conditioning ("HVAC") systems under the Rheem and Ruud brand names. Plaintiffs assert the following claims in their Amended Complaint: breach of express warranty (Count I); breach of implied warranty of merchantability (Count II); fraudulent concealment (Count III); negligent misrepresentation (Count IV); violation of the Magnuson-Moss Warranty Act ("MMWA") (Count V); violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count VI); violation of New York General Business Law § 349 ("NYGBL") (Count VII); violation of the Arizona Consumer Fraud Act ("ACFA") (Count VIII); unjust enrichment (Count IX); and a claim for declaratory relief (Count X). [Docket Item 43 at 22-43.]

Defendant has moved to dismiss all claims in the Amended Complaint, with the exception of the claim for breach of implied warranty of merchantability as to Plaintiff Lawrence Argabright ("Argabright"). [Docket Item 49.] Plaintiffs have submitted a Response in opposition [Docket Item 55] and Defendant has submitted a Reply [Docket Item 56].

The general facts of this case were recited in the Court's previous Opinion and will not be repeated here. See Argabright v. Rheem Manufacturing Company, 201 F. Supp. 3d 578, 587-90 (D.N.J. 2016). The Court will address factual allegations not

made in the original complaint but that were added to the Amended Complaint, however, in the Discussion section, <u>infra</u>.

The Court will address the arguments as to each claim in turn. For the reasons set forth below, the Court denies in part and grants in part Defendant's Motion.

## II.   STANDARD OF REVIEW[1]

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the nonmoving party.[2] A motion to dismiss may be granted only if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the

---

[1] The Court exercises jurisdiction over Plaintiffs' claims under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). <u>See</u> <u>Argabright</u>, 201 F. Supp. 3d at 588 n.2.

[2] The facts alleged are drawn from Plaintiffs' Amended Complaint [Docket Item 43] and from undisputedly authentic documents upon which Plaintiffs explicitly rely in their Complaint. <u>See</u> <u>In re Rockefeller Ctr. Props., Inc., Sec. Litig.</u>, 184 F.3d 280, 287 (3d Cir. 1999). Because Plaintiffs' breach of warranty claims are predicated upon the warranty Defendant provided with their products, the Limited Warranty Defendant submitted will properly be considered in connection with the earlier motion to dismiss. [Docket Item 8-2]. <u>See</u> <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). For purposes of this motion, the Court accepts Plaintiffs' allegations as true.

grounds upon which it rests that make such a claim plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Although the court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Iqbal, 556 U.S. at 678.

In addition, the complaint must contain enough well-pleaded facts to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id. at 679 (internal quotation marks and citation omitted).

Rule 9(b) of the Fed. R. Civ. P. requires particularized pleading for the conduct underlying Plaintiffs' fraud claims. Under Rule 9(b), the "circumstances" of the alleged fraud must be pleaded with enough specificity to "place defendants on notice of the precise misconduct with which they are charged."

_Seville Indus. Mach. Corp. v. Southmost Mach. Corp._, 742 F.2d
786, 791 (3d Cir. 1984). Although the rule states that
"[m]alice, intent, knowledge, and other conditions of a person's
mind may be alleged generally," and does not require the
plaintiff to plead every material detail of the fraud, the
plaintiff must use "alternative means of injecting precision and
some measure of substantiation into their allegations of fraud."
_In re Rockefeller Ctr. Props., Inc. Sec. Litig._, 311 F.3d 198,
216 (3d Cir.2002) (internal quotations and citations omitted).

## IV. DISCUSSION[3]

### A. Breach of Express Warranty (Count I)

Plaintiffs complain that Defendant breached its Warranty
"because the HVAC had a known latent defect and was
substantially certain to fail within the warranty period, Mr.
Argabright did not receive compensation for the costs of
refrigerant to identify the failure, and he has not been
reimbursed for the costs of refrigerant that was not used in
connection with the normal use of his Rheem HVAC." [Docket Item
55 at 18.]

---

[3] As discussed in its previous opinion, the Court will again
postpone the choice of law analysis. See Argabright, 201 F.
Supp. 3d at 591 n.5. To the extent that the parties have briefed
the applicability of New York and Arizona law and presented
arguments based on those bodies of law, the Court will apply
those bodies of law.

Plaintiffs also argue that Defendant's Warranty fails of its essential purpose because the remedy they chose was insufficient under the contract "because Defendant unreasonably delayed recovery under the warranty notwithstanding that it knew, but failed to disclose, that the evaporator coils were substantial[ly] certain to cause failure of the entire unit, depriving Mr. Argabright the substantial benefit of his purchase." [Id. at 19-20.] Finally, Plaintiffs argue that the "fact alleged here state a claim that the exclusion of refrigerant and labor costs" from the Warranty was unconscionable because Defendant knew or should have known that their HVAC units contained this defect when they sold them, that Plaintiffs and Class Members could not have discovered the defect "before failure and certainly not until after the time of purchase," and that "Defendant unreasonably delayed providing remedies under the warranty until after owners had expended money on inspection costs that might reasonably have been avoided but for Defendant's concealment or omissions[.]" [Id. at 20-21.]

For reasons discussed infra, even construed liberally, the allegations in Plaintiffs' Complaint are insufficient to plausibly make out Plaintiffs' claims for breach of warranty as to Argabright. However, the Court will deny Defendant's Motion

as to Fecht. Furthermore, because Arizona law disapproves of disposing with claims of unconscionability at the motion-to-dismiss stage, the Court will also deny Defendant's Motion as to Montano.

1. <u>Defendant Did Not Breach the Terms of Its Warranty as to Argabright and Montano, but Plaintiffs State a Claim for Breach of Warranty as to Fecht</u>

The Court previously ruled that Plaintiff did not plausibly state a claim for breach of express warranty, because, by its terms, the Limited Warranty [Docket Item 8-2] stated under "EXCLUSIONS," that the Limited Warranty did not apply to "parts installed with Covered Equipment or used in connection with normal maintenance, such as cleaning or replacing air filters, refrigerant, thermostats, tubing, or concrete pads"; the Limited Warranty also stated in a section titled "LABOR COSTS" that the warranty "does NOT cover any labor costs of expenses for service, NOR for removing or reinstalling parts." The Court ruled that Plaintiffs did not plausibly allege that Defendant breached the terms of the warranty because Defendant in fact replaced the defective coils; the items Defendant did not replace, in contrast, were those that were excluded by the terms of the warranty. [Docket Item 44 at 3-4 & 12-17.]

Under New Jersey law, "to state a claim for breach of express warranty, Plaintiffs must properly allege: (1) that

Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." <u>Francis E. Parker Memorial Home, Inc. v. Georgia–Pacific LLC</u>, 945 F. Supp. 2d 543, 568 (D.N.J. 2013).

Plaintiff now alleges that although "the limited warranty has an express exclusion relating to refrigerant, that exclusion only excludes coverage for parts installed with the Rheem HVAC or used in connection with the normal maintenance, such as cleaning or replacing refrigerant . . . [and] [t]he refrigerant Mr. Argabright purchased to discover and repair the evaporator coil defect was not . . . used in connection with the Rheem HVAC's normal maintenance. . . . [That refrigerant] should never have had to be replaced because refrigerant does not escape the closed system absent a leak." [Docket Item 55 at 18.]

This argument is unavailing. First, as Defendant correctly notes, Plaintiffs have not alleged any additional factual circumstances regarding the terms of the warranty or any alleged breach thereof by Defendant that address the Court's original decision. [Docket Item 49-1 at 22.] All Plaintiffs allege is a different reading of the terms of the Limited Warranty; however, such an argument is not convincing.

The Limited Warranty provides that it "WILL NOT APPLY TO .
. . parts installed with Covered Equipment or used in connection
with normal maintenance, such as cleaning or replacing air
filters, refrigerant, thermostats, tubing, or concrete pads."
[Docket Item 8-2.] The natural, unconstrained reading of this
exclusion is that the Limited Warranty does not apply to, inter
alia, parts used in connection with normal maintenance. These
non-covered parts include but are not limited to cleaning or
replacing air filters, refrigerant, thermostats, tubing, or
concrete pads. The Limited Warranty, by its express terms,
excludes coverage for refrigerant. Plaintiffs do not point to
any other provision in the Limited Warranty that would suggest
Defendant extended warranty coverage for refrigerant, even that
which was "used in connection" for some purpose other than
normal maintenance. For those reasons, although Plaintiffs
allege that Defendant failed to cover the costs of replacement
refrigerant, the Court again finds that Plaintiffs have failed
to allege a plausible claim that Defendant breached the terms of
the Limited Warranty.

However, Plaintiffs raise new factual allegations with
regard to Fecht that allow her claim for breach of the Limited
Warranty to continue. The original complaint did not allege that
Fecht ever contacted Defendant to seek compensation or

reimbursement for the replacement coil the third-party
technician installed in her HVAC, thereby not allowing the Court
to "draw an inference that Fecht sought replacement by Defendant
of the coil and Defendant refused, in violation of the terms of
the warranty." [Docket Item 44 at 15 n.6.] However, the Amended
Complaint alleges that Fecht, upon noticing that her Rheem HVAC
was not adequately cooling, contacted "an independent Rheem
Contractor, which sent a fully licensed professional technician"
to service the HVAC on two occasions, replacing the evaporator
coil on the second occasion. [Docket Item 43 at 20 ¶¶ 100-101.]
Fecht alleges that although "the Limited Warranty only requires
homeowners to contact a local service technician for repair, Ms.
Fecht contacted Rheem directly in or around May 2015 when she
still had no received reimbursement for the replacement
evaporator coil"; however, "Defendant notified Ms. Fecht that,
even though her Rheem HVAC was still covered by the Warranty,
Rheem would not reimburse any cost incurred because she failed
to contact Rheem and comply with the requirements of its
warranty process." [Id. at 20-21 ¶¶ 102-103.]

     The Limited Warranty states as follows:

     HOW TO OBTAIN WARRANTY CLAIMS ASSISTANCE: You must
     promptly report any failure covered by this Limited
     Warranty to the installing contractor or distributor.
     . . . If the contractor is not available, simply
     contact any other local contractor handling the
     Maufacturer's heating or air conditioning products.

> The name and location of a local contractor can
> usually be found in your telephone directory or by
> contacting the Manufacturer's heating or air
> conditioning distributor.

[Docket Item 8-2 at 1.] Taking the facts in the light most

favorable to Plaintiff and accepting Fecht's allegations as

true, the Limited Warranty does not require that Fecht contact

Rheem directly to seek warranty claims assistance, but rather

only to contact the installing contractor, or, in the

alternative, "any other local contractor" handling Rheem's HVAC

products. Fecht alleges that she did so by contacting Pipe

Doctor, "an independent Rheem Contractor," and in the event, did

ultimately contact Rheem directly to seek compensation for the

replacement evaporator coil. Fecht alleges that Rheem has not

reimbursed her, in violation of the terms of the Limited

Warranty. [Docket Item 43 at 21 ¶ 104.]

Given these factual allegations, the Court finds that Fecht

has sufficiently alleged a claim that Defendant breached its

express Limited Warranty by failing to reimburse her for the

replacement coil.

   2. <u>The Warranty Does Not Fail of Its Essential Purpose</u>

The Court previously ruled that the Limited Warranty does

not fail of its essential purpose, contrary to Plaintiffs'

claims. [Docket Item 44 at 17-21.]

New Jersey law permits parties to a contract to establish

an exclusive or limited remedy under the terms of the contract. N.J.S.A. 12A:2-719(1)(b). However, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose," a remedy may be available under the New Jersey U.C.C. N.J.S.A. § 12A:2-719(2); see also id. cmt. 1 ("[W]here an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article."). Courts have generally concluded that "'so long as the buyer has the use of substantially defect-free goods, the limited remedy should be given effect.'" Viking Yacht Co., Inc. v. Composite One LLC, 385 Fed. App'x 195, 207 (3d Cir. 2010) (quoting Chatlos Sys., Inc. v. Nat'l Cash Register Corp., 635 F.2d 1081, 1085 (3d Cir. 1980)). But where the seller is "either unwilling or unable to conform the goods to the contract," Chatlos, 635 F.2d at 1085, or where "novel circumstances not contemplated by the parties" works to deprive a party of the "substantial value" of its bargain, the remedy [provided for by a limited warranty] will not suffice. BOC Grp., Inc. v. Chevron Chem. Co., LLC, 819 A.2d 431, 438 (N.J. Super. Ct. App. Div. 2003) (internal quotations and citation omitted).

Plaintiffs claim that the Amended Complaint alleges a

failure of the Limited Warranty's essential purpose "because
Defendant unreasonably delayed recovery under the warranty
notwithstanding that it knew, but failed to disclose, that the
evaporator coils were substantial[ly] certain to cause failure
of the entire unit, depriving Mr. Argabright the substantial
benefit of his purchase." [Docket Item 55 at 19-20.] In support
of this argument, Plaintiffs cite to ¶¶ 123 through 127 of the
Amended Complaint. [Docket Item 43 at 24-25.] The gravamen of
these paragraphs is that Defendant's "unreasonable delay" has
been in "refus[ing] to adequately repair or replace Rheem HVACs
in accordance with" Plaintiffs' understanding of the "warranty
terms"; that the Limited Warranty does "not provide the means
for purchasers to . . . remedy damages to their structures
associated with and caused by these defects"[4]; and that, because
Defendant "knew, or was reckless in not knowing, about the
defects," Defendant's failure to notify Plaintiffs and Class
Members (as well as installers and distributors) about the
defect "unreasonably delay[ed] any remedy under the warranty

---

[4] Plaintiffs' argument about the damages to their structures
"associated with and caused by" the defective coils is limited,
of course, by the Limited Warranty's express exclusion of "ANY
CLAIMS FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES." [Docket Item 8-
2.] Plaintiffs do not allege any reason why this exclusion does
not apply to such claims; therefore, any argument premised on
Defendant's "unreasonable delay" in failing to pay for such
consequential damages is unpersuasive.

until after owners had expended money on inspection costs that might reasonably have been avoided[.]" [Id. at 24.]

The "unreasonable delay" cited by Plaintiffs in fact presents a circular argument. The only unreasonable delay alleged, by the Court's reading of the Amended Complaint, has been in Defendant's failure to cover the costs of labor and refrigerant; however, this is what Defendant contends, and the Court has previously ruled, is excluded under the Limited Warranty. The Amended Complaint alleges that Plaintiffs Argabright and Montano in fact received replacement coils, in accordance with the Limited Warranty. For the reasons the Court explained previously, the Plaintiffs do not adequately allege a claim that the warranty failed of its essential purpose where Plaintiffs do not claim that "Defendant refused to repair or replace the nonworking coils, or [that] Defendant's replacement parts failed to function, saddling Plaintiffs with non-working units still under warranty[.]" [Docket Item 44 at 19.] The Court will address, infra, Plaintiffs' argument that Defendant knew or recklessly failed to learn of the defect; however, even if this is true, this does not render the Limited Warranty one that fails of its essential purpose where Defendant did in fact replace the defective part and there continues to be no allegation that the replacement parts in turn failed to function

properly.

The Court's review of the case law cited in support of the argument that the Limited Warranty failed of its essential purpose as to Fecht (citing to New York case law [Docket Item 55 at 22-23]) and Montano (citing to Arizona case law [id. at 24-25]) does not persuade the Court otherwise.

As to Fecht, Plaintiffs cite Siemens Credit Corp v. Marvik Colour, Inc., 859 F. Supp. 686, 689 (S.D.N.Y. 1994); Roneker v. Kenworth Truck Co., 944 F. Supp. 179 (W.D.N.Y. 1996); and Cayuga Harvester Inc. v. Allis-Chalmers Corp., 95 A.D.2d 5, 11-12 (N.Y. App. Div. 1983). In Siemens, the plaintiff alleged that the defendant failed to repair or replace defective components free of charge, 859 F. Supp. at 696, and in Roneker, the plaintiff alleged that the defendant was "unable to repair" the problems with his truck, 944 F. Supp. at 185. In Cayuga, the plaintiff alleged "over 100 mechanical failures and over 100 parts replacement resulting in over 640 actual hours of machine down-time . . . [which led to] a full eight months [to use the equipment for its intended purpose]." 95 A.D.2d at 12. The allegations here--that Fecht "had to incur additional expenses . . . to identify the cause of the failure"--are not analogous. [Docket Item 55 at 23.]

As to Montano, Plaintiffs cite Kalil Bottling Co. v.

15

Burroughs Corp., 619 P.2d 1055 (Ct. App. Ariz. 1980). However, Kalil simply reiterates that it is possible to state a claim that a warranty fails of its essential purpose where "the warrantor fails to correct the defect as promised within a reasonable time." 619 P.2d at 1059 (internal citations omitted).

Plaintiffs cite to the statement in Kalil that the warrantor must give the buyer "goods that conform to the contract within a reasonable time after a defective part is discovered," id., in support of the argument that Defendant unreasonably delayed compensating Montano by failing to replace Montano's coil at some point after Defendant learned that the coil was defective. [Docket Item 55 at 25.] The Court is left to presume that by this statement, Plaintiffs are suggesting that Defendant should have replaced Montano's coil no later than 2013, when Defendant began using aluminum coils to address formicary corrosion concerns. However, this argument is unpersuasive for a variety of reasons. First, the statement in Kalil is expressly focused on the buyer's perspective, and not what the warrantor discovered: "From the point of view of the buyer the purpose of the exclusive remedy is to give him goods that conform to the contract within a reasonable time after a defective part is discovered." 619 P.2d at 1059 (internal citations omitted). Second, Plaintiffs do not plausibly allege

16

in the Amended Complaint that Defendants had a duty to proactively replace copper coils that had not yet malfunctioned; nor do they plausibly allege that all of Defendant's copper coils in fact eventually malfunctioned. Because of this, it cannot be reasonable to construe <u>Kalil</u>'s language to say that because Defendant did not replace Montano's coil <u>before it was alleged to have malfunctioned</u>, Defendant "fail[ed] to correct the defect within a reasonable time after [the] defective part [wa]s discovered."

No other allegations in the Amended Complaint support the contention that Defendant failed to correct the defect in Montano's coil after that defect was discovered; for that reason, <u>Kalil</u> is inapposite and it does not persuade the Court that the Limited Warranty failed of its essential purpose as to Montano.

3. <u>The Warranty Is Not Unconscionable</u>

The Court previously ruled that the Limited Warranty is not procedurally or substantively unconscionable. [Docket Item 44 at 23-28.] Plaintiffs' Amended Complaint does not provide a reason to disturb that decision.

As the Court previously stated, it is well-settled that courts "may refuse to enforce contracts that are unconscionable or violate public policy." <u>Saxon Constr. & Mgmt Corp. v.</u>

<u>Masterclean of N.C., Inc.</u>, 641 A.2d 1056, 1058 (N.J. Super. Ct. App. Div. 1994). In consumer goods transactions such as those involved in this case, "'unconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like, which are stamped unlawful under N.J.S.A. 56:8-2.'" <u>Palmucci v. Brunswick Corp.</u>, 710 A.2d 1045, 1049 (N.J. Super. Ct. App. Div. 1998) (internal citations omitted).

Unconscionability may be either substantive or procedural. New Jersey courts may find a contract term substantively unconscionable if it is "excessively disproportionate" and involves an "exchange of obligations so one-sided as to shock the court's conscience." <u>Delta Funding Corp. v. Harris</u>, 912 A.2d 104, 120 (N.J. 2006) (internal citations omitted). Procedural unconscionability refers to unfairness in the formation of the contract, and may be shown by "a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." <u>Muhammad v. Cty. Bank of Rehoboth Beach, Del.</u>, 912 A.2d 88, 96 (N.J. 2006) (internal citations omitted).

Plaintiffs do not raise any new arguments or point to any newly-raised factual allegations in the Amended Complaint to

18

support a claim that the Warranty was procedurally
unconscionable. Plaintiffs simply reassert their more general
argument that Defendant knew or should have known of the defect
but failed to disclose it, while Plaintiffs could not have known
of it before failure or purchase of the HVACs and that
"Plaintiffs and Class Members had no meaningful choice with
respect to the warranty terms." [Docket Item 55 at 21.] Because
the crux of the procedural unconscionability argument seems to
rely on the already-addressed assertion that Plaintiffs lacked
bargaining power compared to Defendant and/or that the Limited
Warranty was a contract of adhesion, the Court again finds that
Plaintiffs have not pled a plausible claim for procedural
unconscionability. See Brennan v. CIGNA Corp., 282 Fed. App'x
132, 136 (3d Cir. 2008) ("More than a disparity in bargaining
power is needed to show than an arbitration agreement between an
employer and its employee was not entered into willingly");
Skeen v. BMW of N. Am., LLC, No. 13-1531, 2014 WL 283628, at *13
(D.N.J. Jan. 24, 2014) (noting that preprinted contract of
adhesion is not per se unconscionable).

Plaintiffs also allege that the Limited Warranty is
substantively unconscionable because Defendant knew or should
have known the HVACs were defective when Defendant sold them to
Plaintiffs; in support of this allegation, Plaintiffs point to

complaints made online from 2009 to January of 2010, featuring

the complaints of consumers whose Rheem HVACs: needed

replacement coils; had leaking valves; needed replacement coils;

needed several visits from a technician; and leaked and needed a

replacement coil. [Docket Item 43 at 17-18 ¶ 85.] Plaintiffs

also point to Defendant's decision in 2013 to replace copper

coils with aluminum ones to address formicary corrosion

concerns, without notifying consumers whose HVAC units had

copper coils about this issue. [Id. at 16-17 ¶¶ 81-84.] The

Court previously ruled that the original complaint did not

adequately plead that Defendant knew or had reason to know that

the copper coils were defective, given that the online

complaints to which the Complaint previously referred post-dated

the sale of the HVACs to Plaintiffs. [Docket Item 44 at 24-26.]

These new allegations could conceivably address the Court's

concern, despite Defendant's suggestion that the existence of

pre-2010 online complaints does not go far enough to show that

Defendant knew or should have known of the alleged defect at the

time of sale to Plaintiffs. [Docket Item 49-1 at 27 n.7.]

However, as Defendant points out, the Court previously

ruled as follows:

> Plaintiffs' claim also fails because "a finding of
> unconscionability cannot be premised solely upon
> allegations that Defendant knew that a defect in the
> product might arise," and created a limited warranty

20

designed to avoid fixing the defect. Suddreth, 2011 WL
5240965, at *3. New Jersey courts have long held that
such warranties are not so grossly unfair that they
would be considered substantively unconscionable. See,
e.g., T.J. McDermott Transp. Co. v. Cummins, Inc.,
[No. 14-4209,] 2015 WL 1119475, at *9 (D.N.J. Mar. 11,
2015) (fact that defendants knew of alleged defects
when they made the warranties did not establish
substantive unconscionability); Nelson v. Nissan N.
Am., Inc., 894 F. Supp. 2d 558, 565-66 (D.N.J. 2012)
(allegation that defendant car manufacturer "knew with
certainty" that transmission would fail just after
expiration of the warranty period did not make
warranty substantively unconscionable); Alban v. BMW
of N. Am., No. 09-5398, 2011 WL 900114, at *9 (D.N.J.
Mar. 15, 2011) (allegations that defendant knew defect
would arise after expiration of the warranty "do not
indicate that the time and mileage limitation clause
in the warranty was unconscionable); Henderson v.
Volvo Cars of N. Am., LLC, No. 09-4146, 2010 WL
2925913, at *9 (D.N.J. July 1, 2010) (manufacturer's
mere knowledge that a part will fail after expiration
of warranty period "does not alone make [a]
time/mileage limitation unconscionable.").

The plaintiffs in the above cases raised claims of
substantive unconscionability, alleging that defendant
knew of the defect at the time they issued the
warranty; knew when the defect would manifest; and
"manipulated" the warranty's time period so as to
avoid liability. Such conduct, the courts held, did
not make a warranty substantively unconscionable. As
one court explained, this is because a manufacturer
'"must predict rates of failure of particular parts in
order to price warranties,'" and "'[a] rule that would
make failure of a part actionable based on such
"knowledge" would render meaningless'" the limitations
built into a warranty's coverage. T.J. McDermott, . .
. 2015 WL 1119475, at *9 . . . (quoting Abraham v.
Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir.
1986)); see also Majdipour v. Jaguar Land Rover N.
Am., LLC., No. 12-7849, 2013 WL 5574626, at *20
(D.N.J. Oct. 9, 2013) (explaining same). Although in
the above cases, the product defects occurred after
the expiration of the warranty period in the above
cases, the reasoning applies with equal force here.

Plaintiffs' allegation that Defendant knew of a latent
defect at the time it issued its Warranty, even if
true, does not render the warranty unconscionable. As
a manufacturer, Defendant is within its right to
create a limited remedy that minimizes its costs and
obligations based on its prediction of the rate of
failure of particular parts.

[Docket Item 44 at 26-28.] The Court continued, in a
footnote:

> The rule, admittedly, is severe, and grants little
> favor to consumers, but demonstrates the high standard
> that must be met for a contract to be ruled
> "substantively unconscionable." See Dalton v. Gen.
> Motors Corp., No. 05-727, 2005 WL 2654071, at *8
> (D.N.J. Oct. 17, 2005) ("'[A] contract or contract
> provision is not invariably substantively
> unconscionable simply because it is foolish for one
> party and very advantageous to the other. . . .
> Instead, a term is substantively unreasonable where
> the inequity of the term is so extreme as to shock the
> conscience.'") (citation omitted).

> In addition to the reasoning above, the Court finds
> nothing substantively unconscionable about specific
> terms of Defendant's Warranty. Defendant's warranty is
> for five years, which is not so short as to "shock the
> conscience." See, e.g., Nelson, 894 F. Supp. 2d at
> 565-66 (D.N.J. 2012) (finding nothing substantively
> unconscionable about a five-year/60,000 mile
> warranty); Majdipour, 2013 WL 5574626, at *20 (finding
> nothing substantively unconscionable about a six-
> year/75,000 mile warranty). Moreover, a warranty that
> limits the buyer's remedies to repair or replacement
> of non-conforming goods, at the seller's option, has
> long been permitted by New Jersey courts. See, e.g.,
> Palmucci . . ., 710 A.2d [at] 1048 . . .; Alban, 2011
> WL 900114, at *9 (warranty provision stating that
> defendant car manufacturer would "repair or replace"
> any defective parts within four years or 50,000 miles
> was not unconscionable).

[Id. at 28 n.10.] The Court declines to disturb its

original ruling.

The Court has also reviewed New York and Arizona law relating to unconscionability. See State of New York v. Avco Financial Serv., Inc., 50 N.Y.2d 383 (1980) (citing Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965)); Siemens, 859 F. Supp. at 696. [Docket Item 55 at 23-24.] With regard to Fecht, the Court does not find that Plaintiffs plausibly state a claim for unconscionability under New York law.

However, Arizona law does appear to require that the parties be presented with a reasonable opportunity to present evidence as to the "commercial setting, purpose and effect" of a contract to aid the court in making the determination, as a matter of law, as to whether the contract or clause therein was unconscionable. Maxwell v. Fidelity Financial Servs., Inc., 907 P.2d 51, 56 (Ariz. 1995). See also Angus Medical Co. v. Digital Equipment Corp., 840 P.2d 1024, 1032 n.3 (Ct. App. Ariz. 1992); Southwest Pet Prods. Inc. v. Koch Indus., Inc., 89 F. Supp. 2d 1115, 1122 (D. Ariz. 2000), aff'd in part, rev'd in part, 32 F. App'x 213 (9th Cir. 2002). The Court will therefore deny Defendant's motion as to Plaintiffs' limited claim of unconscionability as to Montano "without prejudice to a summary judgment motion once discovery on that limited

issue has been completed," <u>Southwest Pet Prods.</u>, 89 F. Supp. 2d at 1122. The Court notes, however, that "[t]he Arizona Supreme Court has emphasized that findings of unconscionability in a commercial setting are rare," <u>id.</u> (internal citations omitted), and the Court will at this time echo the words of the district court in <u>Southwest Pet Products</u>, when it stated that "given the extremely difficult burden [the plaintiff] would appear to have in demonstrating unconscionability, [the plaintiff] may be well-advised simply to let sleeping dogs lie." <u>Id.</u>

With the exception of the unconscionability claim solely as to Plaintiff Montano, because Plaintiffs do not submit any additional factual allegations to cure the defects noted in the Court's opinion of August 16, 2016, beyond allegations that online consumer complaints about Rheem HVAC units predated the sale of HVACs to Plaintiffs, the Court will not disturb its previous ruling that the allegations here do not support a plausibly-pled claim of substantive unconscionability as to Argabright and Fecht.

For the foregoing reasons, namely that Plaintiffs have not plausibly alleged that (1) Defendant violated the terms of the Limited Warranty as to Argabright and Montano, (2) the Limited Warranty fails of its essential purpose, (3) nor that the

Limited Warranty is unconscionable as to Argabright and Fecht,
the Court will dismiss Plaintiffs' claim for breach of express
warranty except as to (1) the claim for breach of express
warranty as to Fecht and (2) the claim of unconscionability with
regard to Montano.

**B. Breach of Implied Warranty of Merchantability (Count II)**

1. The Court will not dismiss Fecht's claim as time-barred
   at this stage of the proceedings

The Court previously ruled that "Plaintiffs have stated a
plausible claim for breach of the implied warranty of
merchantability," but that Fecht's claim was time-barred because
causes of action based on implied warranties accrue when
delivery of the product is made; for Fecht, this was at some
point in 2010, and she did not file her claim before the four-
year limitations expired under N.J.S.A. § 12A:2-725(1). [Docket
Item 44 at 30; 33-35.]

An implied warranty of merchantability "protect[s] buyers
from loss where the goods purchased are below commercial
standards or are unfit for the buyer's purpose," Crozier v.
Johnson & Johnson Consumer Co., 901 F. Supp. 2d 494, 509 (D.N.J.
2012) (quoting Altronics of Bethlehem, Inc. v. Repco, Inc., 957
F.2d 1102, 1105 (3d Cir. 1992)), and "simply means that the
thing sold is reasonably fit for the general purpose for which

it is manufactured and sold." <u>Henningsen v. Bloomfield Motors</u>,
161 A.2d 69, 76 (N.J. 1960). In order for the implied warranty
of merchantability to be breached, the product at issue must
have been defective or not fit for the general purpose for which
it was manufactured and sold. <u>See</u> <u>Altronics</u>, 957 F.2d at 1105;
<u>Ferrari v. Am. Honda Motor Co.</u>, 2009 WL 211702, at *3 (N.J.
Super. Ct. App. Div. 2009).

Defendant moves again to dismiss Count II as to Fecht on
the grounds that it is time-barred, and the Amended Complaint
does not cure this previously-noted defect. [Docket Item 49-1 at
28-29.]

In response to Defendant's argument that Fecht's claim for
breach of implied warranty is time-barred, Plaintiffs now assert
that Fecht "has alleged sufficient facts to toll the statute of
limitations for her implied warranty claim" because she
"contacted a third party technician consistent with the limited
warranty" and then "contacted Defendant directly and was told
that her claim had been denied on the basis of a false
interpretation of the warranty . . . notwithstanding that her
claim fell within the warranty period. . . . [Because] Ms. Fecht
complied with the warranty and did not find out that Defendant
would not fulfill its warranty obligations until after the
expiration of the statute of limitations . . . [h]er claim is

26

timely." [Docket Item 55 at 28-29.] In support of this argument,

Plaintiffs cite Statistical Phone Philly v. NYNEX Corp., 116 F.

Supp. 2d 468, 482 (S.D.N.Y. 2000) and Statler, D.C. v. Dell,

Inc., 775 F. Supp. 2d 474, 483 (E.D.N.Y. 2011). [Docket Item 55

at 29.]

      In reply, Defendants argue that Fecht cannot successfully

invoke the doctrine of equitable tolling "because she has not

articulated any specific acts by Rheem that prevented her from

timely filing suit or that she exercised due diligence in

pursuing the discovery of her claims," citing to Jackson v.

Eddy's LI RV Ctr., 845 F. Supp. 2d 523, 533 (E.D.N.Y. 2012).

[Docket Item 56 at 13.]

      After careful consideration, the Court will decline at this

time to dismiss Fecht's claim in the Amended Complaint for

breach of implied warranty as being time-barred. Equitable

tolling "applies where defendant's fraudulent conduct results in

Plaintiff's lack of knowledge of a cause of action"; the essence

of equitable tolling "is not whether [the p]laintiff was in

possession of all the information necessary to prevail on [her]

claims, but whether plaintiff had enough information to commence

a lawsuit." Jackson, 845 F. Supp. 2d at 533. Under the doctrine,

"the statute of limitations will be tolled if the plaintiff

pleads, with particularity, the following three elements: (1)

27

wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim." Statistical Phone Philly, 116 F. Supp. 2d at 482.

This presents a close question, to be sure. Fecht has alleged, in support of the element of wrongful concealment, only that Defendant failed to disclose to Plaintiffs that the problem of coil corrosion existed and that it failed to disseminate that information. [Docket Item 43 at 16-17 ¶ 84.] In support of the second element, Plaintiffs rely on the Court to infer that this failure to disseminate the information prevented Fecht from learning of the claim within the limitations period, and in support of the third element, Fecht alleges that she sought repair of her HVAC on or around June 18, 2014 (after having purchased it and had it installed sometime in 2010), again in August of 2014, and then contacted Defendant directly in May of 2015. [Docket Item 43 at 20 ¶¶ 99-102.] This lawsuit was filed in July of 2015. [Docket Item 1.]

The court in Statistical Phone Philly declined to toll the limitations period because, while the plaintiffs there "may not have had all the facts pertinent to their claims[,]" they "knew enough to sue" and "admit that they were not misled by defendants' efforts at concealment." 116 F. Supp. 2d at 482-83.

The court in Jackson declined to toll the limitations period
because the problems complained of by the plaintiff "should
have, if true, been known to a diligent plaintiff" within the
limitations period, the plaintiff alleged that the "defects were
apparent almost immediately after delivery[,]" and the "alleged
years of repairs were certainly enough" to put the plaintiff on
notice of the duty to "make inquiry . . . prior to the
expiration of the applicable Statute of Limitations." 845 F.
Supp. 2d at 533. Those circumstances are not present here, where
the allegations suggest that Fecht did not know or have reason
to know she had any potential cause of action against Defendant
until August of 2014, when she may already have been outside the
limitations period. Arguably, this period extended to May of
2015, when Defendant informed her it would not pay for the cost
of replacing her coil.

In contrast, the court in Statler found that it was not in
a "position, at this stage of the proceedings, to make factual
findings" that would allow it to rule on "whether equitable
principles can toll the running of the statute of limitations,
or estop [the d]efendant from asserting a statute of limitations
defense." 775 F. Supp. 2d at 483. While the plaintiff there had
not shown the requisite "extraordinary circumstances that
justify the requested toll," the court denied the motion to

dismiss the warranty claims because it was "simply too early to tell" whether those claims "may or may not be saved by equitable tolling." Id.

In an abundance of caution, the Court will decline to dismiss Fecht's claim for breach of the implied warranty as time-barred at this early stage of the proceedings. Defendant will, of course, be free to argue that the factual circumstances, as developed in the eventual course of these proceedings, do not support the application of equitable tolling, and the Court will duly consider the record at that time. It may indeed prove to be the case that Fecht cannot show the necessary "extraordinary circumstances" to justify tolling here.

The Court cautions the parties that a general rule holding that a failure to disclose a known defect justifies tolling of the statute of limitations until the plaintiff's discovery of such a defect would likely be unreasonable, given the well-settled law that claims accrue for breach of implied warranties upon "delivery of the product . . . regardless of the purchaser's lack of knowledge." See Moulton v. LG Elecs. USA, Inc., No. 11-4073, 2012 WL 3598760, at *3 (D.N.J. Aug. 21, 2012); N.Y.U.C.C. 2-725(2) (the date of accrual for claims of breach of warranty is "when the breach occurs, regardless of the

aggrieved party's lack of knowledge of the breach"); <u>Brady v.</u>
<u>Lynes</u>, No. 05-cv-6540, 2008 WL 2276518 (S.D.N.Y. June 2, 2008)
("Plaintiff's argument that the statute of limitations did not
begin to run until he discovered the breach is contrary to
black-letter law").

 2. <u>The Court will decline, at this stage of the proceedings,
 to dismiss Count II on the grounds that Fecht and Montano
 lack privity of contract with Defendant</u>

Defendant independently moves to dismiss Count II as to
Fecht and Montano because they lacked privity of contract with
Defendant and "well-settled . . . New York and Arizona law"
requires privity to recover for breach of an implied warranty.
[Docket Item 49-1 at 29.]

New York law provides that implied warranty claims
"require[] privity . . . with the manufacturer where only
economic loss and not personal injury is alleged." <u>Cali v.</u>
<u>Chrysler Group LLC</u>, No. 10-cv-7606, 2011 WL 383952, at *3
(S.D.N.Y. Jan. 18, 2011) (internal citations omitted). The same
requirement exists in Arizona. <u>Flory v. Silvercrest Industries,</u>
<u>Inc.</u>, 633 P.2d 383, 387 (Ariz. 1981).

In response, Plaintiffs submit that Plaintiffs were in
privity with Defendant because "Defendant made direct
representations" to Fecht and Montano regarding the warranty and
the "conditions of the sale" and because "the dealerships from

which [Fecht and Montano] purchased their Rheem HVAC were Rheem
Team Top Contractors . . . and the dealerships and retail
outlets market, warrant, and sell either directly or indirectly
for Defendant." [Docket Item 55 at 29, citing Docket Item 43 at
¶¶ 55, 96, 106, 117.] Plaintiffs also argue that "numerous
courts have concluded that privity is a question of fact ill-
suited for resolution at the motion to dismiss stage" and that
New York "recognizes an exception to the privity requirement for
third-party beneficiaries like Plaintiffs and Class members[.]"
[Docket Item 55 at 29-30.]

The Court finds that Plaintiff has made out a plausible
allegation that the contractors who sold and installed Fecht's
and Montano's HVACs were "Rheem Team Top Contractors" and
thereby acted as agents of Defendant, which would establish the
required privity. Of course, Defendant is free to renew this
argument at a later stage of the proceedings should it believe
that the development of the factual record reveals that the
contractors in question cannot properly be understood as
Defendant's agents. See Dewey v. Volkswagen AG, 558 F. Supp. 2d
505, 524 n.17 ("The Court finds that the issue of privity
between the Defendants and the seller of Romeo's automobile
involves issues of fact not appropriate for resolution at the
motion to dismiss stage. Defendants may renew this argument on a

motion for summary judgment if they choose.").

For that reason, the Court declines to dismiss Count II as to Plaintiffs Fecht and Montano.

### C. Violation of the Magnuson-Moss Warranty Act (Count V)

The Court previously ruled that Count V, Plaintiffs' claim for violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., would not be dismissed as to Plaintiffs Argabright and Montano with regard to their claims for breach of implied warranty. [Docket Item 44 at 37.]

Claims under the MMWA depend upon the disposition of the underlying state law warranty claims. See Johansson v. Cent. Garden & Pet Co., 804 F. Supp. 2d 257, 265 (D.N.J. 2011) ("A claim under the MMWA relies on the underlying state law claim.") See also In re Shop-Vac Mktg. & Sales Practices Litig., 2014 WL 3557189, at *10 (M.D. Pa. July 17, 2014).

Defendant now argues that Plaintiffs' MMWA claims must be dismissed because "Fecht's implied warranty claim is time-barred and . . . both Fecht and Montano fail to allege the requisite privity to maintain an implied warranty claim." [Docket Item 49-1 at 30.] As the Court has already denied Defendant's Motion to Dismiss Count II of the Amended Complaint as to Fecht and Montano on these grounds, this argument as to the MMWA is

33

unavailing.

Defendant also argues that "an action under the MMWA cannot be asserted until the warrantor has been given an opportunity to cure any alleged breach" and the Amended Complaint "contains <u>no</u> allegations whatsoever regarding any notice given by any Plaintiff to Rheem <u>of the alleged breach</u>, or that Rheem was afforded an opportunity to cure such a breach prior to the filing of Plaintiffs' claims." [Docket Item 49-1 at 31; emphasis in original.] Defendant argues that ¶ 174 of the Amended Complaint cannot be used to support this required element because it is "a single, boilerplate allegation." [<u>Id.</u> at n.9.]

Plaintiff argues, and the Court agrees, that the Court already addressed this argument in its previous Opinion. [Docket Item 44 at 37 n.11.] Defendant does not raise any new argument on this point. Pursuant to the law of the case doctrine, <u>see, e.g.</u>, <u>Motamed v. Chubb Corp.</u>, No. 15-7262, 2016 WL 4581409, at *3 (D.N.J. Sept. 1, 2016), the Court sees no reason to revisit or disturb that ruling, and declines to dismiss Count V as it relates to Plaintiffs' claims for breach of implied warranty. For the same reasons, the Court declines to dismiss Count V as it relates to Fecht's claim of breach of the express warranty and Montano's claim of breach of warranty on the grounds of unconscionability.

34

**D. Fraudulent Concealment and Negligent Misrepresentation (Counts III and IV)**

The Court previously dismissed Plaintiffs' claims of fraudulent concealment and negligent misrepresentation because the Court found that the allegations in the complaint were "insufficient to show that Defendant knowingly or negligently misrepresented or omitted a material fact about a possible defect in their HVAC units[.]" [Docket Item 44 at 38.]

Defendant renews their argument to dismiss these claims in the Amended Complaint on the grounds that (1) the economic loss rule bars recovery for these claims; (2) Plaintiffs have not pled their fraudulent concealment claim with the required particularity; and (3) Plaintiffs cannot allege a the requisite duty for successful allegation of a negligent misrepresentation claim. [Docket Item 49-1 at 31-38.] For the reasons set forth below, the Court will grant Defendant's motion to dismiss Counts III and IV.

1. Fraudulent Concealment

The Court previously dismissed Plaintiffs' claim of fraudulent concealment on two alternative grounds: first, that the allegations in the original complaint did not give rise to a reasonable inference that "Defendant knew about the alleged defect in its product when Plaintiffs purchased it[,]" thereby

35

failing to make the required showing of "either an affirmative misrepresentation or an omission," and, second, because New Jersey law requires a showing that there was a legal duty to disclose omitted or concealed information that is the basis for a claim of fraudulent concealment and Plaintiffs did not make the required showing. [Docket Item 44 at 40-41, 41-43.]

While the online complaints from 2009 and early 2010 about Defendant's product, predating Plaintiffs' purchases, conceivably address the first reason, Plaintiff does not adequately cure the defects noted by the second reason for the Court's decision to dismiss the claim for fraudulent concealment.

Rule 9(b) requires that Plaintiff plead the fraudulent concealment claim with particularity. See Weske v. Samsung Elecs. Am., Inc., No. 2:10-4811, 2012 WL 833003, at *5 (D.N.J. Mar. 12, 2012). To allege fraudulent concealment, a plaintiff must plead with particularity five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997). Cf. Bannister v. Agard, 125 A.D.3d 797, 798 (N.Y.

App. Div. 2015); Impact Fin. Servs., LLC v. Six400 Check Solutions, LLC, No. 10-0070, 2010 WL 5056212, at *2 (D. Ariz. Dec. 6, 2010) ("Under Arizona law fraudulent concealment occurs when one party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information"; plaintiff fails to state a claim when it "simply makes general, conclusory statements" not alleging "sufficient facts demonstrating the element of concealment" or "particular acts of concealment or identify each individual defendant's role in the concealment").

Again, the Amended Complaint does not include sufficient allegations tending to show the requisite element of concealment.

Under New Jersey and New York law, the plaintiff must show that there was a duty to disclose because of a special relationship between the parties. See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1185 (3rd Cir. 1993); Deutsche Zentral-Genossenchaftsbank AG v. HSBC North America Holdings, Inc., No. 12-cv-4025, 2013 WL 6667601, at *16 (S.D.N.Y. Dec. 17, 2013) (fraudulent concealment claims require a "special relationship"). Such a duty arises when there is a fiduciary relationship between the parties, when one party expressly reposits trust in another party (or such trust is necessarily

implied from the circumstances), or when the relationship between the parties is so intrinsically fiduciary that a degree of trust is required to protect the parties, as in an insurance contract. See Lightning Lube, 4 F.3d at 1185. [Docket Item 44 at 41-42.] Plaintiffs do not, in their Amended Complaint, plead any additional facts that would allow for an inference that the requisite "special relationship" existed such that Defendant had an affirmative duty to disclose; nor does the Amended Complaint point to any actual affirmative act of misrepresentation or concealment by Defendant, nor to any misrepresented fact of which Defendant had knowledge.

To the extent that Arizona law does not require "a misrepresentation or a duty to disclose" for a claim of "fraudulent concealment" to "constitute common law fraud," Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 394 Pension Trust Fund, 38 P.3d 12, 35-36 (Ariz. 2002), the Court does not find that applicable to Montano's claim of fraudulent concealment in the case at bar. In Wells Fargo, the Arizona Supreme Court "clearly distinguish[ed] . . . concealment and nondisclosure. The former is characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter. The latter is characterized by mere silence." 38 P.3d at 36. To

the extent that "concealment" does not require a "duty to disclose" to constitute "common law fraud," then, Plaintiffs do not allege in the Amended Complaint any such concealment, but rather only nondisclosure. As Defendant correctly states, "the Amended Complaint is devoid of . . . a particularized [allegation] that Rheem affirmatively or actively concealed any material fact." [Docket Item 49-1 at 36.] This does not meet the pleading standard for the claim under Rule 9(b). See Schwatka v. Super Millwork, Inc., 106 A.D. 3d 897, 900 (App. Div. N.Y. 2013); Impact Fin. Servs., 2010 WL 5056212, at *2.

The Court also finds relevant and analogous the reasoning in Weske, wherein the court found that complaints made by unspecified customers, predating the plaintiffs' purchases at issue in the case, were insufficient to establish that the defendant actually knew of the defect because the allegations did "not allege who at Samsung learned of these complaints[,] . . . [and did] not identify any particular individuals who complained." 2012 WL 833003, at *5.

Because Plaintiff has not cured the defects noted in the earlier Opinion of the Court, the Court will again dismiss Plaintiffs' claim for fraudulent concealment.

2. Negligent Misrepresentation

The Court previously dismissed Plaintiffs' claim for

39

negligent misrepresentation because the Plaintiffs did not

allege, as is required under New Jersey law, that any omission

by Defendant occurred in a context where Defendant "owe[d] an

independent duty imposed by law." [Docket Item 44 at 44-45,

citing <u>Saltiel v. GSI Consultants, Inc.</u>, 788 A.2d 268, 279-80

(N.J. 2002).]

    As the Court previously ruled:

> Plaintiffs' claim for negligent misrepresentation
> fails for the same reasons that Plaintiffs' fraudulent
> omission fails. . . . [A]n omission-based negligent
> misrepresentation claim, like a claim of fraudulent
> concealment, is unsupported on the current facts
> because Plaintiffs have not shown that Defendant's
> relationship with Plaintiffs created a duty disclose
> the alleged defect. <u>See Karu v. Feldman</u>, 574 A.2d 420,
> 426 (N.J. 1990); <u>S. Broward Hosp. Dist</u>, 516 F. Supp.
> 2d at 397. Courts in this district have not hesitated
> to dismiss negligent misrepresentation claims by a
> purchaser against a manufacturer, absent allegations
> showing a special relationship. Nothing in the
> Complaint suggests the existence of an implied
> fiduciary duty, or that Plaintiffs "reposed special
> trust in [D]efendant prior to purchase," and there is
> ample support for dismissal. <u>See Peruto v. TimberTech
> Ltd.</u>, 126 F. Supp. 3d 447, 457 (D.N.J. Aug. 26, 2015)
> (Simandle, J.); <u>Stevenson</u>, 2015 WL 3487756, at *9-10
> (car manufacturer had no duty to disclose alleged
> defect to car purchaser because "there [were] no
> allegations to suggest that defendant did anything
> that would have encouraged Plaintiff to place
> particular trust or confidence in it"); <u>Coba v. Ford
> Motor Co.</u>, 2013 WL 244687 at *12 (D.N.J. Jan. 22,
> 2013) ("New Jersey Courts have found no special
> relationship between individual consumers and
> automobile manufacturers that would impose a duty to
> disclose on the manufacturers"); <u>Alin v. Am. Honda
> Motor Co.</u>, No. 08-4825, 2010 WL 1372308, at *14
> (D.N.J. Mar. 31, 2010) (allegations that defendant car
> manufacturer failed to disclose a defect during sale

were "insufficient to state a claim for negligent
misrepresentation by omission" because there was no
fiduciary or intrinsically fiduciary duty and
plaintiff did not repose a special trust in defendant
when he entered into car lease); Green v. G.M.C., No.
A-2831-01T-5, 2003 WL 21730592, at *8 (N.J. Super. Ct.
App. Div. July 10, 2003) (car manufacturer similarly
had no duty to disclose a defect to purchasers of its
cars).

[Docket Item 44 at 45-47.] The same hurdle is presented to

Plaintiffs under New York law. See Naughright v. Weiss, 826

F. Supp. 2d 676, 688 (S.D.N.Y. 2011) (to plead the

requisite "duty arising out of a special relationship[,]" a

plaintiff must "establish something beyond an ordinary

arm's length transaction"); Grupo Sistemas Integrales de

Telecomunicacion S.A. de C.V. v. AT&T Communications, Inc.,

No. 92-cv-7862, 1996 WL 312535, at *9 (S.D.N.Y. June 10,

1996) ("[T]o survive dismissal, the allegations that

support the claim of a special relationship must suggest a

closer degree of trust than that of the ordinary buyer and

seller") (internal citations omitted). Plaintiffs do not

adequately allege that a special relationship existed such

that Defendant owed them a duty.

While Arizona law requires that a plaintiff allege

"that he was owed a duty of care by the defendant[,]"

Southwest Non-Profit Housing Corp. v. Nowak, 322 P.3d 204,

208 (Ct. App. Ariz. 2014), "no special relationship is

41

required"; a party may owe a duty to "any foreseeable user of information." Leist v. Academy Mortgage Corp., No. CV-16-00314-PHX-DGC, 2016 WL 1593815, at *3 (D. Ariz. Apr. 20, 2016) (citing St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co., 742 P.2d 808, 813 (Ariz. 1987)) (internal citations omitted). However, Plaintiffs fail to allege adequately, as is required, under Arizona law that Defendant "supplie[d] false information for the guidance of others in their business transactions" or "caused them" "pecuniary loss" "by their justifiable reliance upon the information" having "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." Leist, 2016 WL 1593815, at *3. The Amended Complaint is devoid of sufficient factual allegations to allow for a reasonable inference that Defendant failed to exercise reasonable care or competence in obtaining or communicating any alleged false information.

For those reasons, the Court will dismiss Plaintiffs' claim of negligent misrepresentation.[5]

---

[5] As in the Court's earlier Opinion, "[b]ecause Plaintiffs' claims for fraudulent concealment and negligent misrepresentation have been dismissed on the grounds above, the Court need not reach the question of whether the claims are barred by the economic loss rule." [Docket Item 44 at 47 n.13.]

## E. Statutory Claims (Counts VI, VII, and VIII)

The Court previously dismissed Plaintiffs' claims under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 et seq., the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1521 et seq., and New York General Business Law ("NYGBL") § 349, all of which prohibit deceptive practices in connection with the sale or advertisement of consumer goods. [Docket Item 44 at 47-67.]

The Court ruled that, although "Plaintiffs have pleaded the 'who, what, when, and where' of Defendant's misconduct with specificity, the allegedly deceptive advertising statements are too vague to constitute misrepresentations of material fact[.]" [Id. at 52.] The Court found that the "statements cited by Plaintiffs as the basis for their consumer fraud claims are conclusory and highly subjective, falling on the side of opinion rather than fact. . . . They are neither measurable nor concrete and are simply too imprecise to be considered material." [Id. at 55-56.] Because statements that violate these statutes must constitute "misrepresentation[s]" that are "material to the transaction" and are "statement[s] of fact, found to be false, made to induce the buyer to make the purchase," and not simply conclusory statements or "merely 'vague and ill-defined opinions' or 'puffery'," the Court dismissed these claims. [Id.

43

at 54-55, citing <u>Gennari v. Weichert Co. Realtors</u>, 691 A.2d 350, 366 (N.J. 1997) and <u>CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P.</u>, 940 F. Supp. 2d 141, 159 (D.N.J. 2013) (internal citations omitted).]

The only additional facts alleged in the Amended Complaint by Plaintiffs relevant to these claims appears to be the existence of the consumer complaints from 2009 and early 2010. [Docket Item 43 at 17-18 ¶ 85.] Otherwise, Plaintiff appears to rely solely on allegations that "Defendant violated each of these statutes by its unconscionable warranty practices and by concealing and failing to disclose the defective nature of its Rheem HVAC." [Docket Item 55 at 37.] However, the Court previously ruled that the allegations supporting these claims of misrepresentation failed to state a claim for relief. [Docket Item 44 at 54-60.]

As the Court also already discussed in its earlier opinion, "to the extent that Plaintiffs rely on a theory that Defendant committed consumer fraud through material omission" or failure to warn about a defect, that argument is unavailing. [Docket Item 44 at 60 n.17.] Plaintiffs have not sufficiently alleged under the NYGBL that Defendant "<u>alone</u> possess[ed] material information that [wa]s relevant to the consumer and fail[ed] to provide this information." <u>Gomez-Jimenez v. N.Y. Law Sch.</u>, 103

A.D.3d 13, 16-17 (N.Y. App. Div. 2012) (internal citations
omitted) (emphasis added). Nor can Plaintiffs state a claim
under NJCFA that Defendant "[knew] with certainty that a product
[would] fail," thereby violating the NJCFA "by failing to inform
its consumers of the possibility of failure." Alban v. BMW of N.
Am., LLC, No. 09-5398, 2010 WL 3636253, at *10 (D.N.J. Sept. 8,
2010). Finally, Plaintiffs do not adequately plead that
Defendant had a duty of disclosure under the ACFA, as they must
do to state a claim for a material omission under that statute.
Grimmelman v. Pulte Home Corp., No. 08-1878, 2010 WL 2744943, at
*4 (D. Ariz. July 9, 2010) (citing Haisch v. Allstate Ins. Co.,
5 P.3d 940, 944 (Ariz. Ct. App. 2000)).

Furthermore, the Amended Complaint does not address or cure
the Court's previous ruling that the "Complaint [wa]s devoid of
any facts which would create an inference that, at the time of
their purchase, Argabright, Fecht, or Montano were aware of the
allegedly false advertising claims." [Docket Item 44 at 62.] The
relevant factual allegations are in the Amended Complaint at
¶ 88 (as to Argabright), ¶¶ 96 through 98 (as to Fecht), and
¶¶ 106 through 109 (as to Montano). [Docket Item 43 at 18-21.]
However, the Amended Complaint does not allege that Plaintiffs
saw or knew of the alleged misrepresentations or false
advertising, only that (1) Argabright "assess[ed] the value and

compatibility of several competing options" before choosing a
Rheem HVAC; (2) Fecht "discussed the quality of various air
conditioner brands with her contractor . . . [who d]irectly and
through Rheem marketing materials, . . . represented that Rheem
was a quality brand and that Rheem HVAC was suitable . . .
because it was superior to comparable products from other
manufacturers; and(3) Montano did precisely the same thing as
Fecht with his respective contractor. [Id.] Again, these
allegations do not allow for an inference that Plaintiffs saw
"the misleading statements" before they came into possession of
the products they purchased, which they must do to properly
allege causation or reliance under these statutes. [Docket Item
44 at 61, citing Goldemberg v. Johnson & Johnson Consumer Co., 8
F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (internal citations
omitted).] As the Court previously ruled, the state statutory
consumer fraud claims "also fail for failure to show causation."
[Docket Item 44 at 63.]

Accordingly, Counts VI, VII, and VIII will be dismissed for
failure to state a claim.


### F. Equitable Relief (Counts IX and X)

The Court previously dismissed Plaintiffs' claims for
equitable relief "because they [were] premised on the underlying

46

allegations of deceptive acts and breach of express warranty,
which the Court . . . found [to have been] insufficiently
pleaded." [Docket Item 44 at 67.]

    The Court finds that Plaintiffs' claim for unjust
enrichment is insufficiently pled. While at this stage of the
proceedings, the Court will deny Defendant's Motion to Dismiss
with regard to (1) the breach of express warranty claims as to
Fecht and Montano, (2) the breach of implied warranty claims,
and (3) the MMWA claims, that decision does not automatically
render sufficient Plaintiffs' claim for unjust enrichment.

    First, the Amended Complaint asserts that Defendant was
unjustly "enriched and received substantial benefits at the
expense of Plaintiffs and the Classes, including but not limited
to the amount saved by deceiving Plaintiffs and Class Members to
unfairly bear the responsibility for Defendant's warranty
obligations . . . as a result of its materially misleading and
deceptive acts and practices . . . [and its] deliberate and
deceptive conduct[.]" [Docket Item 43 at 41-42 ¶¶ 232-34.]
However, the claims that the Court has found to be sufficiently
pled do not establish that Defendant committed any "materially
misleading and deceptive acts and practices" or engaged in
"deliberate and deceptive conduct."

    Second, to "state a claim for unjust enrichment under New

Jersey law, a [p]laintiff must establish that . . . [p]laintiff expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." McGuire v. BMW of N. Am., LLC, No. 13-7356, 2014 WL 2566132, at *2 (D.N.J. June 6, 2014) (internal citations omitted). Plaintiffs do not plead or allege facts to support the contention that Defendant failed to remunerate Plaintiff and accordingly was enriched "beyond its contractual rights." The plaintiff's claim in McGuire was dismissed because he did not allege "that he did not receive the product he purchased . . . [but rather] that Defendant concealed certain defects in and misrepresented the qualities and functionality of the navigation system in the vehicle Plaintiff purchased." Id. at *3. Similar requirements under New York and Arizona law necessitate dismissal of this claim as well. See Corsello v. Verizon New York, Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012) (unjust enrichment only available when "defendant has not breached a contract nor committed a recognized tort" but nevertheless, e.g., "has received money to which he or she is not entitled" though "guilty of no wrongdoing"); Brooks v. Valley Nat. Bank, 548 P.2d 1166, 1171 (Ariz. 1976) ("where there is a specific contract which governs the relationship of the parties, the doctrine of

48

unjust enrichment has no application").

The Court will, therefore, dismiss the claim for unjust enrichment.

As for Plaintiffs' claim for declaratory relief, the Court agrees with Defendant that Plaintiffs cannot "allege facts from which it appears there is a substantial likelihood that [they] will suffer injury in the future," as "a party requesting a declaratory judgment must" do. Lattaker v. Rendell, 269 Fed. Appx. 230, 233 (3d Cir. 2008). The Amended Complaint does not allege that Plaintiffs have suffered any loss or injury after their coils were replaced, and the allegation that Defendant began to use aluminum coils in 2013 not subject to the risk of formicary corrosion suggests that Plaintiffs cannot show the requisite "substantial likelihood" of future injury as to the larger class. For this reason, the Court will dismiss Plaintiffs' claim for declaratory relief.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion with respect to Counts I (breach of express warranty as to Fecht and Montano), II (breach of implied warranty) and V (violation of Magnuson-Moss Warranty Act) and will grant Defendant's motion with respect to the remaining claims. The

claims will be dismissed with prejudice, as it appears, after deficiencies remain in the Amended Complaint, that further amendments of these failed claims would be futile. The accompanying Order will be entered.

**June 23, 2017**                              **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                           U.S. District Judge